PEOPLE v WIESE

Docket No. 74438. Argued June 4, 1986 (Calendar No. 10). Decided July 28, 1986.

Scott E. Wiese was convicted by a jury in the Lake Circuit Court, Richard I. Cooper, J., of breaking and entering an occupied dwelling with intent to commit larceny. The Court of Appeals, CYNAR, P.J., and J. H. GILLIS and ANDERSON, JJ., affirmed in an unpublished memorandum opinion (Docket No. 66189). The defendant appeals.

In a unanimous opinion by Justice RILEY, the Supreme Court *held:*

The prosecutor's failure to correct the false testimony of a key witness that he had received no promise in return for his coöperation denied the defendant a fair trial consistent with federal due process guarantees, requiring reversal and remand for a new trial.

1. It is inconsistent with the requirements of due process guaranteed by the Fourteenth Amendment for a prosecutor to allow the false testimony of a prosecution witness to stand uncorrected even though the prosecutor did not solicit the testimony and the testimony goes only to the credibility of the witness. Where, as in this case, an accomplice has been granted immunity or other leniency to secure testimony, it is incumbent upon the prosecutor to disclose this fact to the jury upon the request of defense counsel. A prosecutor has an affirmative duty to correct a witness' false testimony against a defendant that he was not promised consideration for his testimony within sufficient time to assure that the defendant is not deprived of the opportunity for the factfinder to hear the full story. While failure to correct false testimony does not auto-

REFERENCES

Am Jur 2d, Prosecuting Attorneys §§ 23-29.

Am Jur 2d, New Trial §§ 56 *et seq.*

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

Appeal by state of order granting new trial in criminal case. 95 ALR3d 596.

matically require reversal, a new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury.

2. In this case, although the witness falsely testified at the preliminary examination and not during trial in the presence of the jury that he was offered no consideration in return for his coöperation, the ultimate effect of the prosecutor's failure to correct the false testimony resulted in considerable prejudice to defendant. The defendant and defense counsel justifiably relied upon the false testimony and cannot have been expected to anticipate that the prosecutor would capitalize on it in derogation of his affirmative duty to correct it. Whether the witness had an agreement regarding his testimony was important to the jury's evaluation of his credibility. Because the jury was unable to properly evaluate the witness' credibility, there was more than a reasonable likelihood that its verdict was affected.

Reversed and remanded for a new trial.

PROSECUTING ATTORNEYS — FAILURE TO CORRECT FALSE TESTIMONY — DUE PROCESS — NEW TRIAL.

A prosecutor's failure to correct false testimony of a key prosecution witness that he had received no promise in return for his coöperation does not automatically require reversal; however, a new trial is required if the false testimony in any reasonable likelihood could have affected the judgment of the jury, and thus denied the defendant a fair trial consistent with due process guarantees (US Const, Am XIV).

State Appellate Defender (by *Rolf E. Berg*) for the defendant.

RILEY, J. Defendant was convicted by a jury of breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305, and was sentenced to a prison term of eight to fifteen years. We granted leave to appeal to consider whether defendant was denied due process of law, requiring reversal of his conviction, because: (1) the prosecution failed to correct the false preliminary examination testimony of its principal witness concerning the nonexistence of any promise of consideration in return for his testimony and, (2) the prosecution capitalized on

that false testimony at trial by eliciting the witness' conviction for the same offense and implying that no consideration had been promised in return for his testimony when, in fact, such consideration had been promised. We hold that defendant was denied a fair trial consistent with due process in violation of the Fourteenth Amendment of the United States Constitution[1] and, therefore, that his conviction cannot stand. We reverse the decision of the Court of Appeals affirming defendant's conviction, and remand this matter for a new trial.

I

The key prosecution witness against defendant was codefendant Dean Piper who had been charged and convicted of the same breaking and entering offense. Piper pled guilty in accordance with the favorable plea agreement set forth by the prosecution which included a requirement that Piper testify in any proceedings regarding defendant. The prosecution promised to dismiss pending charges in another case and to recommend that no prison sentence be given in the present case in return for Piper's coöperation.[2]

---

[1] US Const, Am XIV. We do not, in this case, consider the independent application of the Michigan Constitution due process provision, Const 1963, art 1, § 17.

[2] As set forth by the prosecutor at final conference, December 9, 1981, the plea agreement for accomplice Piper was as follows:

*The Court:* It is the Court's understanding that the prosecutor is going to make an offer and that that offer would be accepted.

\* \* \*

[*Prosecuting Attorney*]: Yes, Your Honor. This is in regard to files 2105 and files 2124. The nature of the case settlement would be that upon acceptance of the plea and sentencing in file 2124, that 2105 would be dismissed. And that specifically, Mr. Piper would be required to plead guilty to the fifteen year breaking and entering of the Bimba residence in file 2124 and that he would be required to testify truthfully in any proceed-

The prosecution's case against defendant depended almost entirely on Piper's testimony. In response to defendant's motion to dismiss, the prosecution explained the delay in defendant's arrest:

> I would state that I assume that the defendant has some question as to why there was a period of delay between April of 1981 when a statement was given by Piper, the co-defendant, and the breaking and entering, and the issuance of a warrant a number of months later in December of the same year. I would state for the Court that Piper plead —pled guilty to this crime on, I believe, December 3, 1981 and only at that time and in conjunction with that plea, did we feel we were able to go forward with the prosecution in this case.

Defendant's preliminary examination was held on January 20, 1982. On cross-examination, Piper falsely testified as follows:

> *Q. [Defense counsel]*: It's also been mentioned that you were charged in this matter. Have you been given any promises regarding your testimony today?
> *A. [Mr. Piper]*: No.
> *Q.* Has anyone promised you regarding any other incidents or anything going on?
> *A.* No.
> *Q.* Are you concerned with the fact that you are pending sentencing in this matter?
> *A.* Yeah, I am.
> *Q.* Has that in any way affected your testimony today?
> *A.* No.
> *Q.* Has anyone offered to make any recommen-

ings regarding the codefendant in this matter, Scott Wiese. And that upon sentencing, my office would make a recommendation of no prison time in the case of Mr. Piper.

dations based upon what you're testifying to today?

*A.* No.

*Q.* Do you feel that if you testify today that you're going to be receiving some fair treatment down the road?

*A.* No, not that I know of.

Piper was subsequently sentenced on April 1, 1982, to a term of probation.[3]

At defendant's trial on April 16, 1982, Piper testified that he and defendant had broken into and entered the residence in question and that they had removed some guns, holsters, ammunition, and a microwave oven from the premises.[4] On direct examination, the prosecution questioned Piper regarding his guilty plea, eliciting Piper's conviction without mentioning the plea agreement or its terms.[5] Defendant testified, denying any involvement in the breaking and entering of the residence in question and denying having had any knowledge of it.[6]

During closing argument, the prosecutor bolstered Piper's credibility as follows:

---

[3] Piper received two years probation, with the first thirty days to be spent in the county jail.

[4] Piper's trial testimony diverged from his prior testimony in one respect. At trial Piper testified that a third party had accompanied him and defendant in the breaking and entering in question. At the preliminary examination, Piper had not mentioned the third party, and at trial he testified that he had remained silent in order not to implicate that third party.

[5] The prosecutor questioned Piper, on direct examination, regarding his involvement in the breaking and entering, his guilty plea, and the fact that he had been sentenced. The sentence itself was not specified, and there was no mention of the plea bargain.

[6] Defendant testified that he had never been to the residence in question and that he had never even discussed participating in the breaking and entering. He testified that the extent of his involvement with Piper in this matter was that he had agreed to store the guns, which Piper had implied were stolen, at his apartment and in return Piper would sell him the microwave oven for $25.

> Now, you may ask yourself, why did Mr. Piper testify? Probably because he was caught and he didn't have any choice. Maybe Mr. Piper's learned something from all this. I don't know. I hope so.

During his rebuttal, he added:

> Consider this in judging credibility. What possible thing does Dean Piper have to gain by not telling you the truth? Why wouldn't he tell you the truth?

The jury found defendant guilty as charged, and the Court of Appeals affirmed defendant's conviction in a memorandum opinion released April 27, 1984.

Following receipt of the prosecution's answer to this Court's order to show cause why defendant's conviction ought not be reversed,[7] we granted leave to appeal on September 25, 1985.[8]

II

It is inconsistent with due process when the prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears, even when the false

---

[7] Pursuant to defendant's letter request for review of his conviction under MCR 7.303 on February 5, 1985, this Court ordered the prosecutor to show cause why the defendant's conviction should not be reversed on the grounds that: (1) the prosecuting attorney failed to correct the accomplice's false testimony at the preliminary examination regarding his plea bargain, *People v Woods, 416 Mich 581, 601-604; 331 NW2d 707 (1982); (2) it was error to elicit testimony from the accomplice at trial that he had pled guilty in connection with the offense with which defendant was charged. People v Lytal,* 415 Mich 603, 612; 329 NW2d 738 (1982).

Our disposition of this case, reversing defendant's conviction on the ground that the prosecutor's failure to correct the accomplice's false preliminary examination testimony effectively resulted in a denial of due process, makes it unnecessary to address whether reversal would be required on the basis of the alleged *Lytal* error.

[8] 422 Mich 974.

testimony goes only to the credibility of the witness. *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972); *Napue v Illinois,* 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). See *United States v Bigeleisen,* 625 F2d 203 (CA 8, 1980); *United States v Sanfilippo,* 564 F2d 176 (CA 5, 1977). See also *People v Woods,* 416 Mich 581, 601-604; 331 NW2d 707 (1982); *People v Atkins,* 397 Mich 163, 173-174; 243 NW2d 292 (1976).

In *Napue, supra,* the United States Supreme Court held that it was a denial of due process for the prosecution to fail to correct the false testimony of its principal witness that he had received no promise of consideration for his testimony. The Court said:

> The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. [*Id.,* 269.]

In *Giglio, supra,* the prosecution's key witness falsely testified, similarly, that he had received no promise in return for his coöperation. The Supreme Court, in reversing and remanding for a new trial, reasoned that, although the prosecution's failure to correct such false testimony does not automatically require reversal, a new trial is required if the " 'false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' " *Id.,* 154 (quoting *Napue, supra,* 271). The Court concluded:

Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it. [*Id.*, 154-155.]

In *People v Woods, supra,* we acknowledged that "the prosecutor has an affirmative duty to correct a witness' false testimony against a defendant that he was not promised consideration for his testimony." *Id.,* 601. See *People v Atkins, supra,* 173-174. In *Atkins,* we said:

Where an accomplice or co-conspirator has been granted immunity or other leniency to secure his testimony, it is incumbent upon the prosecutor and the trial judge, if the fact comes to the court's attention, to disclose such fact to the jury upon request of defense counsel. [*Id.,* 173.]

The prosecution's duty to correct the false testimony of a state witness arises "when [the false testimony] appears." *Napue, supra,* 269.[9] In the present case, the witness falsely testified that he was offered no consideration in return for his coöperation at the preliminary examination hearing, and not at trial in the presence of the jury. We are convinced, however, that the ultimate effect of the prosecution's failure to correct that

---

[9] We note that the proposed Rules of Criminal Procedure would place a mandatory duty on the prosecutor to disclose to the defendant's lawyer, subject to certain exceptions and upon request, "[a]ny plea agreements or grants of immunity made with or given to witnesses in connection with the defendant's case." Proposed MCR 6.202(8).

As explained in the commentary to that provision:

Arguably the constitution requires disclosure of the information included in this subrule. See, e.g., *Giglio v United States, supra.* Whatever the scope of the constitutional rule, however, no reason exists for not informing the defendant of plea agreements or grants of immunity that witnesses have received.

false testimony resulted in considerable prejudice to defendant at trial. Defendant, and his counsel, justifiably relied upon the prosecution witness' false preliminary examination testimony and cannot have been expected to anticipate that the prosecutor would capitalize on that false testimony in derogation of his affirmative duty to correct it. Consequently, defense counsel did not requestion Piper at trial concerning the existence of any promise of consideration for his testimony, and the prosecutor was able to bolster Piper's credibility by effectively implying that no such consideration had been promised.

In the present case, which depended almost entirely on Piper's testimony, we must conclude that effectively denying defendant the opportunity to properly question Piper's credibility, an important issue in this case, reasonably could have affected the judgment of the jury. See *Giglio, supra,* 154. Whether Piper had an agreement regarding his testimony was important to the jury's evaluation of credibility. Considering Piper's false preliminary examination testimony and its effect on defendant and his counsel at trial, and the prosecutor's direct examination and closing argument, the jury reasonably may have been led to believe that no agreement existed. The jury, as a result, was unable to properly evaluate Piper's credibility, and there is more than a reasonable likelihood that its verdict was thereby affected.

Defendant was denied a fair trial consistent with the requirements of due process guaranteed by the Fourteenth Amendment of the United States Constitution. Therefore, we reverse the decision of the Court of Appeals affirming defendant's conviction, and remand this case for a new trial.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with RILEY, J.