# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHESTER LARVELL STARNES, JR,

        Defendant-Appellant.

UNPUBLISHED
May 12, 2016

No. 326249
Ingham Circuit Court
LC No. 14-000164-FH

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to commit sexual penetration, MCL 750.520g(1), and assault by strangulation, MCL 750.84(1)(b). He was sentenced as a habitual offender (fourth offense), MCL 769.12, to serve concurrent sentences of 300 to 450 months in prison. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's cousin, Tommeica Martin, testified that defendant assaulted her in an effort to have sex with her, and tried to strangle her in the process. She stated that she had invited defendant to her townhome on the night of February 4, 2014 because he had some marijuana that they intended to smoke. Martin reported that defendant arrived around 10:00 p.m. and appeared intoxicated. Defendant testified that he planned on spending the night because it was too late to take a bus back home, and that he had brought an extra pair of pants and $400 in cash.

Martin testified she was on the couch smoking marijuana when defendant approached her and put his hands around her neck to strangle her. Martin claimed that she resisted, was in pain, and had difficulty breathing due to the choking. Martin testified that defendant told her that he was going to have intercourse with her, as he unbuckled her pants and held her arms. Martin said that she was punching defendant and that he then choked her again and asked her if she wanted him to put her to sleep.

Martin stated that she wrestled away from defendant but ended up bent over the couch with defendant behind her. Martin remembered resisting defendant's attempts to pull her pants down and hearing defendant tell her that he was going to have intercourse with her and had wanted to do so for a long time. Martin testified that she told defendant that he would have to

-1-

kill her in order to have sex with her, and defendant replied that he would do whatever it took. Martin continued to fight with defendant and was able to get him into a headlock after she was pushed into a wall, dislodging several pictures. Martin testified that she attempted to escape via the front door when defendant caught her and threw her into the bathroom. Martin recalled screaming and fighting as defendant wrestled with her against the sink in the darkened bathroom. Martin testified that defendant attempted to push her head into the mirror and was choking her while again asking if she wanted to go to sleep. Martin reported feeling dizzy, like she was going to lose consciousness.

Martin testified that she decided to tell defendant that he could have intercourse with her, in order to make him vulnerable. Martin said that defendant exposed his penis and she grasped it hard and successfully wrestled away from him and ran to the kitchen to find a knife. Martin stated that she waived the knife at defendant and backed him down the hallway but he blocked her from exiting through the front door. Martin recalled defendant lying on the kitchen floor inviting her to stab him, when she retrieved her phone as she ran out the back door. Martin said that she ran to the nearby home of her aunt and called 911. She estimated that the attack and struggle lasted 30 to 45 minutes.

Defendant denied the majority of events to which Martin testified. Defendant testified that he went to the bathroom and returned to find Martin going through the pockets of his extra pants, and that he became upset and grabbed Martin by the neck and pushed her backwards, dislodging the pictures from the wall. Defendant testified that Martin tripped over a rug and ran into the wall, and that he was apologizing to her when she began panicking and pleading for him not to kill her. Defendant said that he was shocked and recognized the tension of the situation, so he left voluntarily and got a ride from a friend.

Martin's aunt, Martha Smith, testified that Martin entered her apartment on February 4, 2014, around 11:30 p.m. Smith observed that Martin had a knife in her hands and was frantically saying that her cousin had tried to rape her. Smith saw red marks on Martin's neck and opined that one was in the shape of a thumb. Martin told Smith that defendant had been choking her. According to Smith, Martin remained hysterical as they called 911.

Martin's 911 call was played for the jury; Martin testified that she was mad, crying, and hysterical as she made the call reporting that her cousin had tried to rape her. Martin also had her aunt speak to the operator and report that her lip and arm had been injured because she had fought her way out of a choking situation. Defendant claimed that Martin was not telling the truth, and that she had manufactured the emotions and information reflected in the 911 call.

Ingham County Deputy Sheriff Grant Whittaker responded to the 911 call at 11:36 p.m. on February 4, 2014. He observed that Martin was very upset, with bruises on her neck. According to Whittaker, Martin provided a detailed report regarding how defendant had attempted to choke and rape her, and how she had escaped. Martin also described defendant to Whittaker and provided his name. Whittaker collected the knife that Martin had used against defendant. In Martin's home, Whittaker found the coffee table tilted away from the couch, marijuana on the coffee table, and displaced pictures on the wall.

Whittaker photographed the bruising on Martin's neck near both of her ears, and Martin identified defendant from a photograph. Martin identified a possible location for defendant, and defendant was subsequently arrested in the apartment of a woman in the identified building. Whittaker testified that, as he was leaving the apartment with defendant, and without questioning defendant or telling him the reason for his arrest, defendant volunteered, "All over my f**king cousin." Defendant testified that he was never told the reason for his arrest and was never questioned about what had happened with Martin.

The jury convicted defendant as described above. At sentencing, the trial court sentenced defendant as a habitual offender (fourth offense) based on defendant's previous felony convictions in Cook County, Illinois. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented at trial was insufficient to convict him of the crimes charged. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process[1] requires that evidence of every element of a crime be proven beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). In determining whether the prosecution has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecution to ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, when viewed in a light most favorable to the prosecution, must be considered to determine whether the evidence was sufficient to support the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

To convict defendant of an assault with intent to commit sexual penetration, MCL 750.520g(1), the prosecution had to prove that defendant committed an assault while possessing the intent to commit an act with a sexually improper purpose "involving some actual entry of another person's genital or anal openings or some oral sexual act" with "aggravating circumstances," such as the use of force or coercion. *People v Snell*, 118 Mich App 750, 754-755; 325 NW2d 563 (1982). "It is not necessary to show that the sexual act was started or completed." *Id*. at 755.

Regarding an assault by strangulation, MCL 750.84(b) requires that the prosecution prove that defendant assaulted another person by strangulation or suffocation. MCL 750.84(b)(2) defines "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person."

---

[1] US Const, Am 14.

A defendant commits an assault when there is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Meissner*, 294 Mich App 438, 453–454; 812 NW2d 37 (2011) (citation and quotation marks omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another . . . ." *Id.* at 454 (citation and quotation marks omitted).

Here, defendant does not contest that any specific element of either crime was unsupported by sufficient evidence, but argues that Martin's testimony was not credible, whereas defendant's version of events was accurate. However, in a sufficiency challenge, "[a]n appellate court does not determine credibility; it merely ensures that the jurors were given the chance to hear the admissible evidence necessary to make their decision." *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005). Jurors who view the testimony of the witnesses "are in a superior position to determine the credibility" of the witnesses. *People v Wright*, 44 Mich App 111, 116; 205 NW2d 62 (1972). Thus, this Court will "not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Ortiz*, 249 Mich App 297, 300-301; 642 NW2d 417 (2001) (citations omitted).

Defendant testified that he grabbed Martin by the neck and pushed her backwards after they argued when he discovered her looking through his pants pockets, and that he then left. Martin testified that, without provocation, defendant choked her and tried to hold her down on the couch while saying that he was going to have intercourse with her. Martin described wrestling with defendant as he continued to choke and push her, and as she was bent over the couch, pushed against the wall, and forced into a bathroom. Martin further stated that defendant unbuckled her pants while restraining her on the couch, and momentarily pulled down her pants as she was bent over the couch, and that she eventually escaped while brandishing a knife after taking advantage of defendant exposing himself. Martin's testimony alone provided sufficient evidence to support defendant's convictions. Additionally, there was evidence of bruising around Martin's neck, supporting her testimony. Finally, Martin's statements to her aunt and to police immediately following the incident were substantially consistent with her trial testimony. The evidence was thus sufficient to support defendant's convictions for both offenses.

Defendant argues that Martin provided multiple and contradictory accounts of the events about which she testified. Challenges to witness credibility are appropriately brought in a great weight of the evidence challenge, not a sufficiency challenge. See *People v Lemmon*, 456 Mich 625, 633-636; 576 NW2d 129 (1998) (discussing and distinguishing sufficiency claims and those predicated on the great weight of the evidence). Because defendant did preserve the issue of Martin's credibility below by moving the trial court for a directed verdict, see *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997), we will briefly address this challenge as a challenge to the great weight of the evidence, notwithstanding the mislabeling of defendant's claim

A defendant may be entitled to a new trial on the ground that the verdict was against the great weight of the evidence "only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *Lemmon*, 456 Mich at 627. "We review for an abuse of discretion a trial court's determination that a verdict was not against the great weight of the evidence. An abuse of discretion will be found only where the trial court's denial of the motion was manifestly against the clear weight of the evidence."

*People v Stiller*, 242 Mich App 38, 49; 617 NW2d 697 (2000) (citation omitted); *People v Daoust*, 228 Mich App 1, 16; 577 NW2d 179 (1998). Conflicting testimony does not render a verdict suspect; rather, a verdict may be overturned based on the lack of credibility of witnesses only under "exceptional circumstances" such as testimony that "contradicts indisputable facts or laws" or "is so patently implausible it could not be believed by a reasonable juror" or is "seriously impeached" and the case is "marked by uncertainties and discrepancies." *Lemmon*, 456 Mich at 643-644, 647 (quotation marks and citations omitted).

Here, defendant notes that Martin testified that he arrived at her home at 10:08 p.m. and that the assault began 17 or 18 minutes later, but she did not call 911 until 11:30 p.m. Assuming that defendant is suggesting that the attack could not have lasted for the roughly one hour of elapsed time between its inception and the time that Martin fled to her aunt's home, he provides no support for this assertion. Further, the timeline testimony was not contradicted because Martin estimated that the attack and struggle lasted 30 to 45 minutes. Although Martin's approximation of the time involved left 15 to 30 minutes unaccounted for, it did not contradict the testimony that defendant arrived, socialized with Martin, and assaulted her for an extended period before she escaped. The timeline provided by defendant was similar in that he stated that he arrived a little after 10:00 p.m., and socialized for about 45 minutes before an altercation and his exit. Martin's testimony was thus not meaningfully impeached on this point. *Id*. at 643-644.

Defendant further asserts that Martin testified that defendant, being much larger than Martin, pulled her pants down to her ankles, and that she was dizzy from the choking. Defendant argues that if Martin's pants were around her ankles and she was dizzy, she could not have run away from her much larger attacker, put him in a headlock, or grasped his genitals in order to escape. However, it is not an indisputable fact that a smaller victim may never gain the upper hand on a larger assailant. *Id*.

Defendant also notes that Martin testified at trial that defendant turned the bathroom lights off before she turned them back on, but that her preliminary examination testimony was that she turned the bathroom lights off. Martin did contradict herself regarding who had manipulated the bathroom light switch. However, Martin concluded that she did not know who had turned the light on, and did not know who had turned the light off, because the activity was too frantic. Martin's inconsistent testimony on a minor event that occurred during her prolonged assault does not seriously impeach her testimony as a whole. *Id*.

Defendant's remaining arguments on this point simply assert that Martin's testimony is contradicted by defendant's, which is not a ground for overturning a jury verdict. *Id*. at 647. The jury was able to view the conflicting testimony of defendant and Martin, including consideration of any variances highlighted by defendant. The jury was able to consider defendant's arguments and determined that Martin's testimony was credible. Thus, defendant has not demonstrated that he is entitled to relief under either a sufficiency of the evidence or great weight of the evidence theory.

### III. HABITUAL OFFENDER STATUS

Defendant further argues that the trial court erred in sentencing defendant as a fourth habitual offender due to errors in the presentence investigation report (PSIR) regarding his prior

criminal record. We disagree. "We review a trial court's response to a claim of inaccuracy in the PSIR for an abuse of discretion." *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Defendant was sentenced to a minimum term of 25 years in prison because the trial court determined that he was a fourth habitual offender under MCL 769.12(1). Defendant does not dispute that he was convicted of two prior felonies in Cook County, a June 28, 1985 conviction and a January 28, 1993 conviction. The prosecution argued that defendant was also convicted of a third prior felony arising out of a June 28, 1995 conviction, both because defendant had served time before the murder conviction of that date was overturned and set for a new trial, and also because there was no evidence that a June 28, 1995 conviction for aggravated battery with a firearm arising out of the same proceeding had been overturned. The trial court noted that the PSIR[2] indicated that the murder conviction had been overturned, so the court did not include it as a prior conviction. However, because the PSIR did not indicate that the aggravated battery with a firearm conviction had been overturned, the trial court concluded that defendant had been previously convicted of a third felony.

A defendant's sentence must be based on accurate information. *People v Malkowski*, 385 Mich 244, 249; 188 NW2d 559 (1971). Defendant argues that there was no documentation provided regarding the aggravated battery with a firearm conviction and that the trial court therefore wrongfully concluded that it was still valid. We note that defendant's conviction for aggravated battery with a firearm was not in fact overturned. In *People v Cooper*, 194 Ill 2d 419, 438; 743 NE 2d 32 (2000), the Illinois Supreme Court affirmed the appellate court's decision reversing defendant's murder conviction and expressly affirmed defendant's conviction for aggravated battery with a firearm. Additionally, in *Lucey*, 287 Mich App at 275, citing *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003), the Court outlined the following procedure for challenges to the accuracy of the PSIR:

> A sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges. The trial court may determine that the challenged information is accurate, accept the defendant's version, or disregard the challenged information as irrelevant. If the court chooses to disregard the challenged information, it must indicate that it did not consider the information when fashioning the sentence and it must strike the information from the PSIR. [Citations and quotation marks omitted.]

---

[2] The parties make reference on appeal to an amended PSIR, which was not included with the record provided to this Court; the record contains only the prior version. Nonetheless, the sentencing transcript contains adequate reference to its contents for this Court to review the trial court's sentencing decision. We note that it was defendant's responsibility to provide this Court with a copy of his PSIR to present his sentencing appeal. See MCR 7.212(C)(7).

Further, MCL 769.13(6) provides, in relevant part:

> The defendant shall bear the burden of establishing a prima facie showing that an alleged prior conviction is inaccurate or constitutionally invalid. If the defendant establishes a prima facie showing that information or evidence concerning an alleged prior conviction is inaccurate, the prosecuting attorney shall bear the burden of proving, by a preponderance of the evidence, that the information or evidence is accurate.

Here, the trial court accepted defendant's correction, as well as the prosecution's report, that defendant's murder conviction had been overturned, and did not include that conviction in its calculation. However, trial court noted that the PSIR stated that the murder conviction, but not the aggravated battery conviction, had been overturned. There is a presumption that the information contained in the PSIR is accurate unless the defendant raises an effective challenge. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). Here, defendant stated that he had no corrections to the PSIR. Moreover, the record includes a certified Cook County Order of Sentence and Commitment to the Illinois Department of Corrections, dated June 28, 1995, that listed defendant's convictions for murder and aggravated battery with a firearm. According to MCL 769.13(5)(a),(d), and (e), "[t]he existence of a prior conviction may be established" by, among other methods, "[a] copy of a judgment of conviction," "[i]nformation contained in a presentence report," and "[a] statement of defendant."

Defendant argues that there was no proof that defendant's conviction for aggravated battery with a firearm had not also been set aside, and that the trial court relied on speculation that it had not been set aside. However, the Illinois order of sentence and the PSIR lists the offense as valid and, unlike the murder conviction, there was no argument that the aggravated battery with a firearm conviction had been overturned on appeal. Defendant did not argue or establish that the aggravated battery with a firearm conviction was inaccurate. That the murder conviction was reversed was not evidence that the aggravated battery with a firearm conviction was reversed. Thus, given the documentation provided to the trial court, and the acquiescence of defendant, the trial court properly excluded defendant's murder conviction and properly included defendant's conviction for aggravated battery with a firearm as a prior felony. It was not an abuse of discretion for the trial court to find that defendant was previously convicted of the felony of aggravated battery with a firearm, which constituted a third previous felony conviction and provided the basis for sentencing as a fourth habitual offender.

## IV. STANDARD 4 BRIEF

In his standard 4 brief,[3] defendant argues that he was convicted based on the perjured testimony of Martin, which the prosecution knew to be false and failed to correct. Defendant

---

[3] A supplemental brief filed in propria persona in accordance with Administrative Order No. 2004-6.

also argues that his appellate counsel provided ineffective assistance in failing to raise this issue on appeal. We disagree with both assertions.

Unpreserved issues may be reviewed for plain error that affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id*. The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment[4] right to counsel is reviewed de novo. *People v Unger* (*On Remand*), 278 Mich App 210, 242; 749 NW2d 272 (2008).

"A State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). The prosecution has a constitutional obligation to report when a government witness lies under oath because the Due Process Clause of the Fourteenth Amendment[5] guarantees that "criminal prosecutions must comport with prevailing notions of fundamental fairness." *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). "It is inconsistent with due process" for the prosecution to fail to correct false testimony from a prosecution witness, even if the prosecution did not solicit the false testimony. *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986), citing *Giglio v United States*, 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972). The prosecution has a duty to correct false evidence, and Michigan courts recognize that "the prosecutor may not knowingly use false testimony to obtain a conviction." *Herndon*, 246 Mich App at 417. The duty to correct the false testimony of a witness presents when the false testimony appears. *Wiese*, 425 Mich at 455, citing *Napue*, 360 US at 269. The prosecution must correct false testimony impacting the credibility of the witness because a defendant's guilt or innocence may depend on the jury's credibility determinations. *Wiese*, 425 Mich at 454, citing *Napue*, 360 US at 269. Failure to correct false testimony requires reversal if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *People v Canter*, 197 Mich App 550, 568; 496 NW2d 336 (1992), citing *Giglio*, 405 US at 154; *Wiese*, 425 Mich at 454.

Defendant cites as false Martin's statements that defendant was intoxicated when he arrived at her home, and that they discussed what he had been drinking. He also asserts that she falsely described his intoxicated state. Defendant states that this testimony was false because Martin testified at the preliminary examination that "[h]e drinks. But, he did not drink that night." However, defendant has not established that the trial testimony was false, or that the prosecution knew the trial testimony to be false. Although Martin's trial testimony may be seen as contradictory from her preliminary examination testimony, Martin was not directly asked during the preliminary examination whether defendant was intoxicated. During the preliminary examination, Martin was asked what happened after defendant arrived and she was sitting on the

---

[4] US Const, Am VI.

[5] US Const, Am XIV.

couch. Martin then testified that she smoked marijuana that defendant had provided, but that she was not drinking, and that defendant was not smoking marijuana and was not drinking that night. Thus, Martin may have been saying that defendant did not drink while with her, which was not contradictory to her trial testimony that he appeared intoxicated on arrival.

In *Smith*, 498 Mich at 476, citing *United States v Martin*, 59 F 3d 767, 770 (CA 8, 1995), the Court noted that "not every contradiction is material" and "the prosecutor need not correct every instance of mistaken or inaccurate testimony." The "crucial inquiry for due process purposes" concerns "the *effect* of a prosecutor's failure to correct false testimony." *Smith*, 498 Mich at 476 (emphasis in original). The Court, in *Smith*, warned that it is particularly in contrast to due process where the prosecution reinforces and capitalizes on false testimony. *Id*. (citation omitted). Here, defendant has not demonstrated that Martin's testimony that he arrived intoxicated was false. Additionally, the prosecution did not rely on evidence of defendant's intoxication (which was not an element of either offense) to demonstrate his guilt, and did not mention defendant's intoxication in closing argument.

Defendant also states that several of Martin's statements at trial were lies that the prosecution failed to correct. Defendant points to testimony that he pulled Martin's hair and that he tried to hit her head on the bathroom mirror. However, he does not offer any proof or argument regarding the alleged falsity of these statements or whether the prosecution knew them to be false. Additionally, defendant mentions Martin's preliminary examination testimony that she could not say whether defendant was circumcised; he maintains that this was a false statement or evidence that Martin lied, because she said that she had grabbed his penis in a lighted room. However, neither attorney asked Martin at trial about her preliminary examination testimony or whether defendant was circumcised, and Martin did not testify regarding the appearance of defendant's penis at trial and did not testify that defendant was or was not circumcised and therefore did not provide any testimony in contradiction of her preliminary examination testimony. Thus, defendant has not demonstrated that Martin provided perjured testimony that the prosecutor failed to correct. We further reject any suggestion that Martin's inability to recall one physical detail about defendant during a prolonged and intense encounter indicates that her testimony was false and the prosecution knowingly relied upon such falsity. *Herndon*, 246 Mich App at 417.

Defendant argues that his appellate counsel provided ineffective assistance by failing to raise as an issue on appeal the prosecution's alleged failure to correct false testimony. The same standards apply to both a claim of ineffective assistance of appellate counsel and a claim of ineffective assistance of trial counsel. *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2006). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The effective assistance of counsel is presumed, and the

defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

A counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. Here, defendant argues that his appellate counsel was ineffective in failing to raise the issue of a failure to correct perjured testimony. "An appellate attorney's failure to raise an issue may result in counsel's performance falling below an objective standard of reasonableness if that error is sufficiently egregious and prejudicial." *People v Reed*, 198 Mich App 639, 646-467; 499 NW2d 441 (1993). However, appellate counsel is presumed to have functioned as a reasonable appellate attorney in selecting the issues presented. *Reed*, 449 Mich at 391; *People v Uphaus*, 278 Mich App 174, 186-187; 748 NW2d 899 (2008). "[A]ppellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002), citing *Reed*, 449 Mich at 391. Because defendant was not able to demonstrate that Martin testified falsely or that the prosecution knew she testified falsely and failed to correct the testimony, it was a reasonable strategy to decline to raise an issue with no demonstrable merit. Defendant has not overcome the presumption that his appellate counsel made a sound strategic decision in declining to present this issue.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering