*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHELTON DEAN ANTOINE,

      Defendant-Appellant.

UNPUBLISHED
August 12, 2021

No. 353013
Macomb Circuit Court
LC No. 2019-001381-FH

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to do great bodily harm, MCL 750.84, and prisoner in possession of a weapon, MCL 800.283(4). The trial court sentenced defendant as a third habitual offender, MCL 769.11, to serve concurrent prison terms of 6 to 10 years for each conviction. Defendant appeals by right, and we affirm.

## I. FACTS

Defendant's convictions were the result of assaulting another inmate, Tyler Richards, when they were incarcerated together. Richards had returned from the hospital after treatment for injuries from an assault. Richards obtained permission to shower and defendant, whom he had encountered only once previously, left his room without permission and found Richards alone in the shower room. Defendant attacked Richards in the shower by repeatedly stabbing him with a self-fashioned knife (a "shank"), cutting his head and shoulder. Corrections officers, including Gerald Dancy, quickly responded and subdued defendant with a taser. He was convicted as charged.

## II. MISSING-WITNESS INSTRUCTION

Defendant argues that trial court erred by failing to instruct the jury that it might infer that certain witnesses, whom the prosecutor had endorsed but failed to produce, would have testified unfavorably to the prosecution.

-1-

"This Court reviews a trial court's denial of a request for a 'missing-witness instruction' for an abuse of discretion." *People v Snider*, 239 Mich App 393, 422; 608 NW2d 502 (2000). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "[T]he trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997) (quotation marks and citation omitted).

According to MCL 767.40a(1), the prosecutor "shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." Additionally, MCL 767.40a(3) provides that "[n]ot less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial."

"Once a witness is endorsed under MCL 767.40a(3), the prosecution must use due diligence to produce the witness." *People v Duenaz,* 306 Mich App 85, 104; 854 NW2d 531 (2014), citing *People v Eccles,* 260 Mich App 379, 388; 677 NW2d 76 (2004). The prosecutor may add or delete witnesses from this list "at any time," provided that the defendant stipulates to the amendment or "upon leave of the court and for good cause shown." MCL 767.40a(4). See also *People v Everett*, 318 Mich App 511, 518; 899 NW2d 94 (2017). If the prosecution fails to produce a witness, and has not been properly excused by a trial court's finding that the prosecutor used due diligence to produce the witness, the court should provide a missing-witness instruction to the jury. *Eccles*, 260 Mich App at 388-389; *People v Snider*, 239 Mich App 393, 422-423; 608 NW2d 502 (2000). The missing-witness instruction consists of the following:

> "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." [*Everett*, 318 Mich App at 527, quoting M Crim JI 5.12.]

In this case, after defendant requested the missing-witness instruction because two endorsed police officers were not called, the prosecutor asserted that he had presented all the witnesses on the witness list, and defendant was apparently referencing witnesses from the police report. The trial court agreed that the prosecutor was not obligated to present the witnesses in the police report and thus denied the motion. However, the prosecutor had filed a "list of known witnesses" that names five persons, the three who were presented at trial, and two who were not. The document further stated, "This list should also be construed as the list of endorsed witnesses that the people intend to call at trial, unless you receive a supplemental list prior to trial."

The prosecutor did not comply with MCL 767.40a because there was no amendment to the list of endorsed witnesses "upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). And having merely relied on the prosecutor's incorrect

representation that he had presented all endorsed witnesses, the trial court failed to consider whether the prosecutor acted with due diligence to produce all endorsed witnesses. "[T]he statute is quite plain," leaving "no in-between 'alternative witness' who may or may not be produced on the whim of the prosecution." *Everett*, 318 Mich App at 522. The prosecutor and the trial court thus failed to operate within the statutory requirements. See *Eccles*, 260 Mich App at 388-389.

However, in order to obtain reversal, a defendant must demonstrate that the instructional error "undermined reliability in the verdict." *People v Cornell*, 466 Mich 335, 363-364; 646 NW2d 127 (2002). Reversal is appropriate when a defendant shows that "it is more probable than not that the error was outcome determinative." *Everett*, 318 Mich App at 528 (quotation marks and citation omitted). In this case, defendant argues that, without the instruction, he could not argue that the jury should infer that the missing witnesses would have testified that the weapon with which he allegedly assaulted defendant was not found in the shower, which would have led the jury to conclude that the location from which the knife was recovered had not been established. However, the evidence demonstrated that the knife was located in the shower room after the attack. Richards testified that he observed defendant discard the knife under a heater, which he pointed out to officers. A responding officer heard something hit the floor as he attempted to stop defendant from stabbing the victim. Richards identified the knife in a photograph of the heater, and as an exhibit during the trial. Corrections Sergeant Matthew Nguyen testified that another officer recovered the weapon, and that Nguyen placed it into an evidence bag and then in a locker for the State Police to pick up. Further, the missing witnesses were identified as police officers, who thus would not have been involved until after the knife was recovered.

For these reasons, we conclude that defendant has failed to show that the trial court's failure to provide the missing-witness instruction deprived the defense of any significant opportunity. Because defendant has not demonstrated that the instructional error undermined the reliability of the guilty verdict or that the error was outcome determinative, appellate relief is not warranted. A criminal defendant is entitled to a fair trial, not necessarily a perfect one. *People v Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992).

## III. AUTHENTICATION

Defendant argues that the trial court erred by authenticating the knife offered into evidence as the one used in the alleged assault on the basis of its unique characteristics. This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995).

MRE 901 requires that an item be authenticated before it is admitted into evidence. Under MRE 901(a), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." To lay a foundation for the admission of evidence, a prosecutor must provide evidence "identifying the items as what they are purported to be and displaying that the items are connected with the accused or the crime." *People v Jennings*, 118 Mich App 318, 322; 324 NW2d 625 (1982). "Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the possibility of intermeddlers tampering with it." *People v Muhammad*, 326 Mich App 40, 59; 931 NW2d 20, 31 (2018) (quotation marks and citation omitted). "If, after considering such factors, the trial judge

is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence." *Id*. (quotation marks and citation omitted).

A trial court may consider any evidence to determine whether the evidence offered for admission is admissible. *People v McDade*, 301 Mich App 343, 352–353; 836 NW2d 266 (2013). The authentication requirement can be met by the "distinctive characteristics" of an item, such as "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." MRE 901(b)(4).

Defendant asserts that a prison "shank" is commonly a piece of sharpened metal with a cellophane handle, such as the object here at issue. Authentication requires testimony indicating that "the object offered is *the* object which was involved in the incident, and further that the condition of the object is substantially unchanged." *Jennings*, 118 Mich App at 322 (emphasis in original; citation omitted). For the trial court to determine that an item has been authenticated, "[i]t need only meet the minimum requirements for admissibility," and it is not required that the proposed evidence "be free of weakness or doubt." *McDade*, 301 Mich App at 352-353 (quotation marks and citation omitted).

> If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. [*People v White*, 208 Mich App 126, 130; 527 NW2d 34 (1994).]

In this case, Richards's testimony that the shank was readily identifiable to him because of the shape of the cellophane when it was in defendant's hand referred to a distinctive characteristic of the knife in question. Additionally, Richards's identification of the knife in evidence as the one that he saw during the assault, and that he saw defendant attempt to discard, supported authentication. For these reasons, we hold that it was within the range of reasonable and principled outcomes for the trial court to conclude that the knife was satisfactorily authenticated.

Defendant additionally argues that the chain of custody was not sufficiently established to allow the knife into evidence. The chain of custody must be "sufficiently complete to render it reasonably probable that the original item has neither been exchanged with another nor been contaminated or tampered with." *White*, 208 Mich App at 131 (quotation marks and citation omitted). In this case, Richards saw defendant discard the knife under a heating register and pointed it out to officers who photographed it. Nguyen testified that he received the knife from another sergeant an hour and a half after the incident, and sealed the envelope for collection by the State Police. But there was no testimony regarding possession of the knife between its discovery under the heater until it was given to Nguyen, or from anyone who possessed it with the State Police. We agree with the trial court, however, that, under these circumstances, any gaps in accounting for the chain of custody concerned the weight of the evidence, not its admissibility. See *id.* at 130-131. Additionally, defendant has not actually asserted that the knife at issue had been altered or replaced before trial. For these reasons, the trial court did not abuse its discretion by admitting the knife into evidence.

## IV. FALSE TESTIMONY

Defendant argues that the prosecutor improperly failed to correct false testimony from a prosecution witness during the preliminary examination.

Ordinarily, the test of prosecutorial error "is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). However, if there is no objection to a prosecutor's conduct or request for a curative instruction, review is limited to determining whether there was plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent person, or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (quotation marks and citation omitted).

" '[A] State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . .' " *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). Prosecutors have a constitutional obligation to report when a government witness lies under oath because the Due Process Clause of the Fourteenth Amendment established that "criminal prosecutions must comport with prevailing notions of fundamental fairness." *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001) (citation omitted). Michigan courts recognize that "the prosecutor may not knowingly use false testimony to obtain a conviction." *Id.* (citation omitted). The duty to correct the false testimony of a witness arises when the false testimony appears. *People v Wiese*, 425 Mich 448, 455; 389 NW2d 866 (1986). Failure to correct false testimony requires reversal if there is any reasonable likelihood that the false testimony affected the judgment of the jury. *People v Canter*, 197 Mich App 550, 568; 496 NW2d 336 (1992).[1]

In this case, Corrections Officer Dancy testified at the preliminary examination that he saw defendant stabbing Richards with a metal knife, and he identified the knife from a photograph. However, at trial, Dancy testified that he did not actually see the knife—in defendant's hand or on the floor. It therefore appears that Dancy testified incorrectly at the preliminary examination, as the prosecutor acknowledges on appeal.

We first note that there is nothing to suggest that the prosecutor during the preliminary examination was aware that Dancy testified falsely concerning this detail about the case. Thus, we question whether the prosecutor had a duty at the time to correct his testimony. Regardless, defendant was convicted after a trial that included Dancy's testimony that he did *not* see the knife, which gave the defense the opportunity to argue that the knife was not properly authenticated. While defendant argues that he lost the opportunity before trial to challenge Richards's

---

[1] Although plain error is the typical standard for review of unpreserved errors, our Supreme Court has suggested that plain error might not apply to *Napue* errors, even when trial counsel is aware of the false testimony. See *Smith*, 498 Mich at 487 n 15. We therefore will not apply the plain-error standard but instead apply the "reasonable likelihood" standard.

identification of the photographed knife at trial,[2] Richards testified that he immediately identified the location of the knife to the officers, and as already explained, a reasonable inference of Nguyen's testimony is that he was given possession of the knife that Richards identified. Thus, even if Richards had been unable to identify the photographed knife, it was otherwise identified. For these reasons, defendant has failed to show a reasonable likelihood that any false testimony at the preliminary examination affected the verdict.

## V. CLOSING ARGUMENT

Defendant argues that the prosecutor's closing argument denied him a fair trial because he argued facts that were not in evidence regarding the knife that was entered into evidence. Defendant alternatively argues that his trial attorney was ineffective for having failed to raise an attendant objection.

When there is no objection to the prosecutor's conduct and no request for a curative instruction, review of a claim of prosecutorial error is limited to determining whether there was plain error that affected substantial rights. *Brown*, 279 Mich App at 134. An unpreserved claim of ineffective assistance of counsel is reviewed for errors apparent on the record. *Unger*, 278 Mich App at 253. The constitutional question whether an attorney provided ineffective assistance, depriving a defendant of the right to counsel, is reviewed de novo. *Id*. at 242.

The responsibility of a prosecutor is "to seek justice and not merely convict." *Dobek*, 274 Mich App at 63. "[T]he test of prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *Id*. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. A defendant "has a right to a fair and impartial jury" with jurors who deliberate about only the "evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997).

Defendant first takes issue with the prosecutor's remarks in closing regarding the appearance of the knife. The prosecutor stated, "It is a makeshift weapon. But it is something that this defendant took time and care . . . [t]o produce so that he could attack Mr. Richards." In rebuttal, the prosecutor added the following:

> It is not a kitchen knife. . . . It is far more dull and far more difficult to plunge into somebody's flesh and do things to hurt them because . . . [i]t is not made for that. . . . This is a piece of metal that they spend time in his cell doing this on the ground, hours, days, I am going to get Tyler Richards. I'm going to get Tyler Richards. . . . And once I was done, what did he do? Flip it over time. Going to get Tyler Richards, over and over. . . . You don't do that unless you want to cause

---

[2] Specifically, defendant argues that because he expected Dancy to identify the photographed knife at trial, he had no reason to "rightfully demand[] Mr. Richards describe the weapon before seeing a photo of it."

great bodily harm to somebody. You don't walk into somebody naked in the shower and say: "You are a dead man," unless you want to do great bodily harm.

Defendant notes that it was not in evidence that defendant spent time fashioning the knife or thinking of stabbing Richards. However, prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship that they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors are also "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. In this case, the challenged statements concerned intent, and defendant had argued that the evidence did not demonstrate defendant's intent to inflict great bodily harm, particularly because the knife was dull. Richards testified that defendant stabbed him with a "shank," which he stated was a piece of metal or plastic with a pointed edge and a handle, which in this case was cellophane wrap.[3] The prosecutor's statement that defendant used a self-styled knife was based on the evidence, and it was a reasonable inference from the evidence that defendant manufactured his own weapon. The argument about intent was also based on defendant's possessing a self-manufactured weapon. It is a reasonable inference that defendant possessed the weapon in order to harm someone, and the evidence that defendant stabbed Richards with it supported the inference that he intended to harm Richards in particular. The prosecutor's use of dramatic wording did not make the arguments that defendant possessed a "shank," and made the weapon with the intent to harm Richards, impermissible.

Defendant also argues that the prosecutor's argument equating the knife that was recovered with the knife used in the assault was not based on the evidence. However, the argument in question was an accurate recounting of Nguyen's testimony that another sergeant provided the knife from the shower room to him, and that he placed it in an evidence bag for the State Police to collect. In inviting the jury to infer that Nguyen's possession of the recovered weapon soon after the attack indicated that the weapon was accounted for at all times, the prosecutor included no remarks that were not supported by the evidence.

Defendant also takes exception to the prosecutor's closing remarks about two witnesses testifying that defendant possessed a knife while assaulting Richards. At trial, only Richards testified that he saw defendant with the knife in his hand, while Dancy stated that he did not see the weapon. However, viewing the challenged comment in the context, it is apparent that the prosecutor was not asserting that Dancy actually saw defendant with the weapon, but was merely inferring from Dancy's testimony that defendant possessed a knife in the shower. Before the prosecutor made the statement in question, the prosecutor pointed out that, according to the evidence, Dancy saw defendant making stabbing motions at Richards's upper torso then heard defendant drop something once he was subdued, that Richards was wounded and bleeding in the upper torso, that Richards saw defendant toss the knife under a heating register in the shower room where the knife was found, and that video evidence supported Dancy's description of the attack. Defendant does not dispute that the facts leading to the prosecutor's conclusion were not in evidence. Further, the prosecutor in fact acknowledged to the jury that Dancy did not see the knife

---

[3] We note that Richards testified that he was stabbed with a makeshift "shank" before he identified the photographed knife.

while encouraging the jury to glean from the circumstantial evidence, including from Dancy, that defendant possessed the knife. For these reasons, we conclude that the prosecutor was not asking the jury to consider facts not in evidence.

Defendant argues that the comment that Richards saw defendant with a unique knife was not in evidence. However, it was a reasonable inference from the evidence that the prosecutor cited—that the knife was a self-made shank, and that it had a cellophane-wrap handle—that the knife had distinctive properties. Prosecutors are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. Defendant has not shown that any of the prosecutor's arguments were improper.

Defendant alternatively argues that his trial counsel provided ineffective assistance by failing to object to the challenged prosecutorial remarks. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (citation omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). In this case, defendant has not demonstrated that his trial counsel's performance was deficient because he had not established that any objection to the prosecutor's comments would have been meritorious. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## VI. CUMULATIVE ERROR

Defendant argues that the cumulative effect of errors in his trial denied him a fair trial. "This Court review [sic] a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). However, defendant has brought to light no errors related to the introduction of the knife in his trial, or its use as evidence. And although the trial court erred by not providing a missing-witness instruction with regard to two witnesses who were endorsed but did not appear, that error, as we concluded above, did not deny defendant a fair trial, and thus does not warrant reversal.

## VII. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court relied on inaccurate information when imposing sentence.

The Court reviews the trial court's factual determinations at sentencing for clear error, and the findings must be supported by a preponderance of the evidence. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "We review a trial court's response to a claim of inaccuracy in the PSIR for an abuse of discretion." *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997).

The recommended guidelines range for defendant's minimum sentence was 38 to 78 months, and the trial court imposed a minimum sentence of 72 months, as the Department of Corrections had recommended. The trial court agreed with trial counsel that defendant may have been afraid to live outside of prison, as demonstrated by the occurrence of the subject assault near his release date after defendant, now 33 years old, had been in prison since he was 17. The prosecutor noted that defendant served close to his maximum sentence because of prison misconduct, and defendant told the trial court that he would like to learn to live outside of prison. While sentencing defendant, the trial court stated as follows:

> Here's the problem . . . . The victim in this case, who was also in prison, had no interaction with you. You tried to kill him. He was randomly selected, and that's the reality. And the recommendation here is absolutely appropriate under those circumstances. You want to get out into free society, well, take advantage of some of the programs that are available in prison. Many people have come through this court who have done extended periods of time in prison, have taken advantage of the various counseling programs, education programs in an attempt to get ready. So you should take advantage.

Defendant asserts that the false information relied on by the trial court was that Richards was randomly selected because defendant had no interaction with Richards, when in fact Richards testified that he had once interacted with defendant when defendant gave him books about two weeks before the stabbing because he did not have a television. However, we do not regard the evidence of that one benign exchange as exposing the trial court's statement about no interaction as a falsehood. The difference between no interactions, as mentioned by the trial court, and one unremarkable interaction does not constitute clear error.

Defendant also states that it was untrue that defendant wanted to kill Richards. However, according to the evidence, defendant attacked Richards in the shower and repeatedly stabbed at his head, neck, and shoulder area, and did not stop until officers subdued him. Because defendant was not charged with a crime involving intent to murder, the jury did not have to consider whether he intended to kill Richards. Nonetheless, given the circumstances and intensity of the attack, a preponderance of the evidence supported that defendant intended to do so.[4]

Defendant also argues that his presentence investigation report (PSIR) incorrectly states that he belonged to a gang, and that the trial court should have corrected that misstatement. The "Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR," and thus, "the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information." *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009).

---

[4] As defendant was neither charged with nor acquitted of a crime involving intent to murder, this case does not run afoul of *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), in which our Supreme Court held that a trial court cannot rely upon "acquitted conduct when imposing sentence." *Id*. at 609. In any event, the trial court's statement was fleeting and does not appear to have formed a significant basis for its sentence.

The PSIR in this case states that defendant denies being in a gang, that Richards reported that defendant was in a gang, and that the Department of Corrections does not know whether defendant was in a gang. At sentencing, the trial court asked defendant whether he reviewed the PSIR and whether it was factually accurate, and defendant responded, "Yes." Thus, the trial court was not asked to resolve any factual matters in the PSIR. This amounted to a waiver by defendant, which extinguished objections on appeal. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). In any event, the PSIR acknowledges that the victim accused defendant of gang involvement, that defendant denied the accusation, and did not itself offer a resolution of the dispute. Thus, defendant's arguments on appeal expose no inaccuracy about gang involvement.[5]

## VIII. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

[5] On December 16, 2020, this Court denied defendant's motion to remand to the trial court to correct the PSIR and for resentencing, stating that the denial was "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Antoine*, unpublished order of the Court of Appeals, entered December 16, 2020 (Docket No. 353013). Given our resolution of this issue today, we conclude that a remand is unnecessary.