*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTRAVEL LAVAR BECKOM,

        Defendant-Appellant.

UNPUBLISHED
May 7, 2019

No. 341482
Saginaw Circuit Court
LC No. 16-043133-FC

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of conspiracy to commit armed robbery. MCL 750.529; MCL 750.157a. We affirm defendant's conviction but remand for resentencing.

## I. BACKGROUND

Defendant's conviction results from the gunpoint robbery of Brenna Sullivan and Kristen Honaman. On April 3, 2016, defendant invited the women to come to the apartment of his friend, Jaylan Rogan. According to Rogan, while the women were sequestered in a bedroom, defendant asked Rogan for permission to rob the women inside the apartment. Rogan testified that he told defendant that he could not rob the women in the apartment and that defendant used Rogan's phone to call another friend, Desmon Reynolds. Rogan stated that he overheard defendant discussing the potential robbery of the women during the phone call. Reynolds testified that defendant called him and asked him to come to Rogan's apartment "to rob somebody." According to Reynolds, he met defendant outside the apartment and defendant provided him with a gun. Reynolds testified that defendant went back into the apartment while he waited outside.

Approximately five minutes later, the women left the apartment and Reynolds accosted them at gunpoint. Reynolds took eight dollars from the women and allowed them to proceed to their vehicle. At that point, a person wearing a hoodie covering his face came up behind Reynolds and took the gun from him. The hooded accomplice then opened the women's car

door and took a phone and a box of marijuana from them. Reynolds and his hooded accomplice then ran back into Rogan's apartment.

Michigan State Police Detective Don Pisha investigated the robbery and testified that Reynolds initially denied his involvement in the criminal affair. One week before trial, however, Reynolds admitted to police that he had robbed the women at gunpoint. Reynolds testified at trial pursuant to a sentencing agreement with the prosecution and identified defendant as the unidentified participant in the robbery. For his part, Reynolds cooperated with investigators and testified at trial pursuant to an agreement with the prosecution that he would not receive any criminal charges related to the robbery. Rogan also testified that defendant was the hooded accomplice. Other evidence tended to show that Rogan himself was the hooded accomplice.

Defendant was charged with one count of conspiracy to commit armed robbery, MCL 750.157a; two counts of armed robbery, MCL 750.529; and two counts of possessing a firearm during the commission of a felony (felony firearm), MCL 750.227b. The jury found defendant guilty of conspiracy to commit armed robbery, but it was unable to render a verdict on the remaining counts. Therefore, the trial court declared a mistrial on the two armed-robbery charges and the two felony-firearm charges. The prosecution later filed a motion for *nolle prosequi* on these charges, which the trial court accepted. The trial court sentenced defendant to 7 to 20 years of imprisonment for his conspiracy conviction. This appeal followed.

## II. ANALYSIS

## A. PROSECUTORIAL ERROR

Defendant first argues that the prosecution committed several errors[1] which denied him a fair trial. Prosecutorial-error issues are decided on a case-by-case basis. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). We review the prosecution's conduct "in context to determine whether the defendant was denied a fair and impartial trial." *Id.*

## 1. FAILURE TO CORRECT TESTIMONY

Defendant first argues that the prosecutor erred by failing to correct misleading testimony. "A State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015) (internal citation and quotation marks omitted). Accordingly, the prosecution must make efforts to correct

---

[1] Defendant labels his issue as one of "prosecutorial misconduct." The term "misconduct," however, "is more appropriately applied to those extreme instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338453), slip op at 7 n 4 (internal citation, quotation marks, and ellipsis omitted). Issues regarding the prosecutor's technical or inadvertent trial errors are "more fairly presented as claims of prosecutorial error." *Id.* (internal citation and quotation marks omitted).

or disclose false testimony from its witnesses. See *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986).

Defendant argues that Rogan gave misleading testimony regarding his agreement with the prosecution. Police-investigation records disclose that Rogan testified at trial in exchange for the prosecution's agreement not to charge him with any crime. At trial, Rogan testified that he was not charged with a crime at the time he spoke to the police, was never charged with a crime, had no charges pending at trial, and that charges against him were not being dismissed. Neither the prosecution nor defense counsel objected to these statements.

Defendant has not shown that Rogan's testimony was false or misleading. Indeed, it is not disputed that Rogan was never charged with a crime and that, accordingly, there were no charges against him to dismiss. What defendant is really contesting is the prosecution's failure to affirmatively disclose Rogan's immunity to the jury. Yet, the prosecution only has a duty to disclose a promise of immunity or leniency "upon request of defense counsel." *People v Atkins*, 397 Mich 163, 173, 243 NW2d 292 (1976). See also *People v Woods*, 416 Mich 581, 601-604; 331 NW2d 707 (1982). Therefore, because defense counsel did not request such a disclosure, the prosecution was not required to disclose its agreement with Rogan.[2]

Alternatively, defendant argues that defense counsel was ineffective for failing to request that the prosecution disclose its agreement with Rogan. A defendant requesting reversal of an otherwise valid conviction on the basis of his trial counsel's assistance bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Here, Rogan's testimony was corroborated by several witnesses, including Reynolds, who disclosed his own agreement with the prosecution and testified that defendant orchestrated the robbery. Accordingly, assuming *arguendo* that defense counsel was ineffective for failing to request the disclosure of Rogan's agreement with the prosecution, there is not a reasonable probability that counsel's error prejudiced the proceedings. Therefore, defendant is not entitled to relief.

## 2. CLOSING ARGUMENT

Defendant next argues that the prosecutor's closing argument denied him a fair trial because he argued facts that were not in evidence and vouched for the credibility of witnesses. Generally, prosecutors are given great latitude regarding their arguments and are "free to argue the evidence and reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). Nonetheless, a "prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). Additionally, a prosecutor may not "vouch for

---

[2] There is no concern that defense counsel was not informed of the agreement before trial.

the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

Defendant challenges several comments made in the prosecution's closing argument. First, the prosecutor argued:

> [Reynolds has] bravely taking the stand against a no snitch culture and saying that guy, my friend, committed the robbery. He'll be labeled for the rest of his life because he took the stand and said that guy, my friend, the one who knew the girls, the one who talked to them in the beginning. And we know he talked to them in the beginning because once we go back the facts don't lie.

The prosecutor later continued:

> On cross examination defense counsel makes statements about the defendant's plea. Oh, he's pleading to armed robbery. Yes, it's juvenile court, but Mr. Reynolds is a juvenile. He's 17. This occurred last year. Right? Mr. Reynolds is taking responsibility. He said I made a mistake. He's bravely testifying from the stand, facing the no snitch culture. I'm gonna tell the truth. Even if it means implicating myself. He's taking responsibility. From the beginning he's always said my friend, [defendant], from the beginning. Never changed.

Finally, in rebuttal closing argument, the prosecutor argued:

> Those comments made in defense closing that he won't be labeled. He will be labeled. In a culture of no snitch, you do not take the stand. You do not testify. That's one of the reasons there's so much—you don't do that. He did it. He did it. He took responsibility. He bravely faced his friend and said he did it.

Defendant argues that the prosecution argued facts not in evidence because there was no evidence concerning a "no snitches" attitude presented at trial. For this same reason, defendant argues that the prosecutor's argument implied some special knowledge of Reynolds' testimony. We disagree. Taken as a whole, the prosecutor's comments merely argued that the jury should believe Reynold's testimony because Reynolds disclosed the crime against his own interests. Indeed, it is not disputed that Reynolds had a friendly relationship with defendant and that his disclosure could have had adverse consequences for Reynolds. The prosecutor's remarks were fair arguments relating the evidence to his theory of the case and did not imply any special knowledge on his behalf. Even though the prosecutor did not confine his comments to the "blandest of all possible terms," his argument did not deny defendant a fair trial. *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (internal citation and quotation marks omitted).

## B. HEARSAY

Defendant argues that the trial court erred by admitting Detective Pisha's hearsay testimony pertaining to statements made to him by Rogan and Reynolds. "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (internal citation and quotation marks omitted). " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible except as otherwise provided by the rules of evidence. MRE 802.

First, defendant argues that the trial court erred by admitting Detective Pisha's testimony that Rogan informed him that defendant and Reynolds were involved in the robberies. We disagree. Under MRE 801(d)(1)(C), the "third-party testimony of an out-of-court statement of identification by an identifier/declarant is substantive nonhearsay evidence—and is admissible even if it goes beyond the simple facts and circumstances of the prior out-of-court statement of identification—if the identifier/declarant testifies and is subject to cross-examination." *People v Sykes*, 229 Mich App 254, 266-267; 582 NW2d 197 (1998). Here, Rogan testified at trial and was subject to cross examination. Detective Pisha testified that Rogan identified defendant and Reynolds as the perpetrators of the armed robberies, which was consistent with Rogan's own testimony. Defendant argues that this testimony does not qualify under MRE 801(d)(1)(C) because Rogan was not present for the actual robbery itself. We disagree. Rogan was present immediately before and after the robbery, overheard defendant planning the robbery, and witnessed Reynolds standing outside the building. Rogan's identification did not depend on his viewing the robbery itself and any discrepancy caused thereby could have been brought out through cross examination. Moreover, defendant was charged with both robbery *and* conspiracy to commit robbery and Rogan actually witnessed defendant conspiring to commit the robbery. Accordingly, we conclude that the testimony was admissible under MRE 801(d)(1)(C).

Next, defendant challenges the trial court's admission of Detective Pisha's statement that Reynolds told him that:

> [he robbed the girls at gunpoint] with [defendant]. He indicated that he was contacted on the phone; that he was told that there was a robbery, that he went over there with the intent knowing that they were going to rob the girls, he waited some time outside, and then he confronted the girls with a gun. Then he was also approached later by [defendant]. They escorted the females to the car and removed their property from them and then fled the scene.

Unlike Rogan's statement, this testimony was not simply a non-hearsay statement of identification under MRE 801(d)(1)(C), but was an out-of-court statement of another person apparently offered for its truth. Therefore, it was non-excepted hearsay, and the trial court erred by admitting it. That an error occurred, however, does not mean that defendant is entitled to relief. Rather, to be entitled to relief, the error must have resulted in a miscarriage of justice. MCL 769.26. Stated otherwise, the error is not a ground for reversal, unless after an examination

of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

Here, Reynolds's statement to Detective Pisha was consistent with his in-court testimony. Importantly, Reynold's in-court testimony was offered pursuant to a cooperation agreement with the prosecution. The jury was informed of this cooperation agreement which, by its very nature, implied that Reynolds had given consistent statements to investigators before trial. The erroneous admission of one of these consistent statements was unlikely to affect the outcome of defendant's trial given that the same was already implied by the cooperation agreement. Accordingly, this error does not entitle defendant to relief.

Relatedly, defendant argues that Detective Pisha vouched for the veracity of other witnesses through an earlier statement in the same line of questioning. "[I]t is improper for a witness to comment or provide an opinion on the credibility of another witness since matters of credibility are to be determined by the trier of fact." *People v Buckey*, 424 Mich 1, 16-17; 378 NW2d 432 (1985) (internal citation, quotation marks, and brackets omitted).

Defendant challenges the following exchange between the prosecutor and Detective Pisha:

> *Q.* So, you've interviewed Jaylen [Rogan], you've interviewed Desmon [Reynolds], you've interviewed [the victims], and you've also done some other investigation with the telephone [records] and some other things, using your investigate tools, experience, and knowledge.
>
> Was the facts consistent with the story told by those individuals?
>
> *A.* Yes, it was. It wasn't uncommon that Desmon Reynolds tried to minimize his own involvement in this armed robbery. But Jaylyn Rogan, Breanna Sullivan and Kirsten Honaman, all their statements from the beginning were corroborated by what we found as far as right down to the minute. And although the victims were a little bit unclear as to who was involved in this to exactly how they were involved, we were able to substantiate that through interviewing the suspects, as well as through the cell phone.
>
> And then later on in that investigation, I believe it was some time last week, Desmon Reynolds again provided another statement. At this point admitted that he was the one who was outside with a gun and had robbed the girls at gun point when they left the house.

Defendant argues that, through this exchange, Detective Pisha commented on the credibility of the witnesses, i.e., implying that the witnesses were telling the truth about the robbery. Taken out of context, defendant's argument would appear to have merit. Nonetheless, this exchange is just a snippet of a longer line of questions in which Detective Pisha walked through his investigation of the alleged crimes. Before asking the challenged question, the prosecutor established what physical evidence Detective Pisha collected and what suspects he interviewed, including initial interviews with Reynolds in which Reynolds denied involvement in the criminal affair. Immediately following the challenged question, the prosecutor asked Detective Pisha

about his most-recent interview with Reynolds—eliciting the aforementioned hearsay statement in which Reynolds finally admitted his involvement in the crime and implicated defendant.

In context, the challenged question and answer provided background for Reynolds' admission to police. The prosecutor was not seeking, and Detective Pisha did not provide, an endorsement of the witnesses' trial testimony. Rather, in context, Detective Pisha testified that the investigators were uncovering consistent evidence except for Reynolds' statements, which helped to explain why Reynolds was interviewed more than once. Thus, through the question, the prosecution was laying a foundation for Detective Pisha's testimony regarding Reynolds' admission. In other words, Detective Pisha was providing an explanation of his investigatory timeline, rather than vouching for the trial witnesses.

In sum, the relevant error in this line of questioning was the trial court's admission of Detective Pisha's hearsay testimony regarding Reynolds' admissions. Although leading to the erroneous admission, Detective Pisha's testimony establishing the timeline of his investigation was not a separate error. Therefore, because, as already discussed, the admission of the hearsay statement was harmless, defendant is not entitled to relief.

## C. OFFENSE VARIABLE SCORING

Lastly, defendant argues that the trial court erred in its scoring of offense variables (OVs) 12 and 13. The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 2 (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 12 scores for contemporaneous felonious criminal acts. MCL 777.42. A felonious criminal act is contemporaneous if (1) it occurred within 24 hours of the sentencing offense and (2) it has not and will not result in a separate conviction. MCL 777.42(2). OV 13 scores for a continuing pattern of criminal behavior. MCL 777.43. OV 13 is temporally broader than OV 12 in that it scores for "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). When scoring these OVs, the trial court should score OV 12 first utilizing all applicable conduct. *People v Bemer*, 286 Mich App 26, 35; 777 NW2d 464 (2009). Conduct scored for OV 12 should not be used to score OV 13. MCL 777.43(2)(c).

The trial court scored OV 12 at 10 points. OV 12 should be scored at 10 points when "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(b). The trial court supported this score with a finding that defendant committed two contemporaneous armed robberies, i.e., the two armed robberies that defendant was charged with but for which the jury could not return a verdict. The trial court

scored OV 13 at 25 points. OV 13 should be scored at 25 points when the "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The trial court found that the crimes supporting this scoring were (1) the sentencing offense and (2) the two aforementioned armed robberies.

We address OV 12 first. Preliminarily, we note that armed robbery is a crime against a person. See MCL 777.16y, MCL 777.42(1)(b). Accordingly, for OV 10 to be scored at 10 points, the trial court must find by a preponderance of the evidence that (1) defendant committed the armed robberies within 24 hours of the sentencing offense, and (2) the armed robberies will not result in separate convictions. MCL 777.42(2). Addressing the second requirement first, the prosecution filed, and the trial court granted, a motion for *nolle prosequi* on the two robbery charges, meaning that defendant will not be convicted of these armed robberies. As to the first requirement, defendant points out that the jury could not reach a verdict on the robbery charges, resulting in the declaration of a mistrial. Defendant implies that the jury's non-verdict indicates that the trial court could not find by a preponderance of the evidence that defendant committed the robberies. We disagree. To convict defendant, the jury had to find beyond a reasonable doubt that he committed the crimes. At sentencing, however, the trial court's finding need only be supported by a preponderance of the evidence. Here, the testimony of coconspirator Reynolds described how defendant robbed the women at gun point, and the testimony of Rogan and the victims corroborated much of Reynolds's testimony. Therefore, we conclude that a preponderance of the evidence supported that defendant committed two armed robberies. It is not contested that these armed robberies occurred within 24 hours of the sentencing offense, conspiracy to commit robbery. Thus, because defendant committed two contemporaneous felonious criminal acts, the trial court appropriately scored OV 12 at 10 points. MCL 777.42(1)(b).

Regarding OV 13, because the trial court properly scored the armed robberies under OV 12, it could not score them under OV 13. See *Bemer*, 286 Mich App at 35 ("[W]hen scoring OV 13, the trial court cannot consider any conduct that was or *should have been* scored under [OV 12]."). Moreover, as relevant to this case, OV 13 scores for a pattern of "crimes against a person." MCL 777.43(1)(c). Conspiracy to commit armed robbery, however, is not a crime against a person. *People v Goodman*, 497 Mich 883, 883; 854 NW2d 720 (2014).[3] Therefore, because a pattern of three or more crimes against a person did not exist, the trial court erred by

---

[3] The Supreme Court in *Goodman* relied on its earlier decisions in *People v Pearson*, 490 Mich 984, 984-985; 807 NW2d 45 (2012) and *People v Bonilla-Machado*, 489 Mich 412; 803 NW2d 217 (2011). In those cases, a divided Court held that because MCL 777.18 classifies conspiracy as a "crime against public safety" rather than a "crime against a person," a conspiracy cannot be considered in scoring OV 13 even if the underlying crime (toward which the conspiracy was directed) was itself a "crime against a person." The wisdom of those holdings, and of the public policy set forth in MCL 777.18 (as interpreted by those decisions), may be open to question. But we need not analyze the issue further. Given that the two armed robberies were properly scored under OV 12, OV 13 must be scored at zero points, regardless of whether the sentencing offense (conspiracy) constitutes a crime against a person.

scoring OV 13 at 25 points. No points should have been assessed for OV 13. MCL 777.43(1)(g). The error alters defendant's sentencing-guidelines range and entitles him to resentencing. *People v Rhodes*, 305 Mich App 85, 91; 849 NW2d 417 (2014).[4]

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[4] Because we conclude that the scoring errors entitle defendant to resentencing, we need not reach defendant's argument that his sentence was disproportionate to his crime.