*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH LAVELL TOOMER,

        Defendant-Appellant.

UNPUBLISHED
December 26, 2019

No. 340390
Wayne Circuit Court
LC No. 16-010655-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRY LESHEWN EDWARDS,

        Defendant-Appellant.

No. 340546
Wayne Circuit Court
LC No. 16-010649-01-FC

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

These consolidated cases arise from a shooting death during a purported robbery. Defendants Keith Toomer and Terry Edwards were tried jointly, before a single jury. The jury convicted both defendants of first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, 750.227b. The trial court sentenced both defendants to life in prison without parole for each murder conviction, 30 to 60 years' imprisonment for the armed robbery conviction, and 5 to 15 years' imprisonment for the felon-in-possession conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm defendants' convictions, but remand for the ministerial task of modifying each defendant's

-1-

judgment of sentence to specify a conviction and sentence for one count of first-degree murder supported by two theories: premeditated murder and felony murder.[1]

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendants' convictions arise from the shooting death of Michael Parker in Detroit, shortly after midnight on November 15, 2016. According to the victim's wife, the victim sold narcotics for a living. The victim's wife heard the victim arrive home shortly after midnight and park his vehicle toward the back of the house. Shortly thereafter, she heard gunfire outside. She heard two separate guns. Neighbors heard gunfire, which they also identified as coming from two different guns. After the victim's wife called 911, she went outside and saw the victim lying on the ground. Another person, identified as defendant Edwards, was also lying on the ground with gunshot wounds, and he was talking on a cell phone. According to testimony at trial, the victim and Edwards had previously been business partners, but they had a falling out over money about two or three years earlier.

When the police arrived, they found the victim lying in the driveway with a .40-caliber firearm in his hand. The gun had been fired until the magazine was empty. The victim did not appear to be breathing. A green bag containing suspected narcotics was recovered from the driveway. Defendant Edwards was lying in the driveway, closer to the garage; he had sustained some gunshot wounds. A .556 handgun was lying near Edwards, and some intact cartridges for that gun were found nearby. A police officer opined that the person with the .556 handgun had ejected a round after attempting to fire the gun but not being able to do so because the safety was on. The police also found spent casings for a .45-caliber handgun between a back fence and a garage. Three .45-caliber bullets were removed from the victim, all of which were fired from the same gun. The police discovered a 25 by 53-inch hole in a chain link fence at the back of the property, and then observed a trail of blood in an alley on the other side of the fence, leading away from the shooting scene. A sample of this blood was collected and tested, and it matched Toomer's DNA profile. Toomer was arrested six days after the offense. The police discovered that he had been shot in his right upper arm and in his right calf. A search of his home led to the discovery of medical supplies, a hooded sweatshirt with a hole in the upper right sleeve, and a bag of trash with bloody gauze and a cell phone.

According to Officer Robert Skender, who was qualified as an expert in the analysis of cell phone records and cell tower mapping, Edwards's cell phone received a call from Toomer's cell phone at 12:28 a.m. on November 15, and the tower location data showed that Toomer's phone was in the area of the shooting at the time of the call. In addition, text messages were sent

---

[1] Dual convictions and sentences for first-degree premeditated murder and first-degree felony murder arising from a single death violate double jeopardy. *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998). The appropriate remedy "is to modify defendant's judgment of conviction and sentence to specify that [the] defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder." *Id*. Accordingly, we remand for this limited purpose.

from Toomer's phone at 1:26 a.m., 1:28 a.m., and 1:29 a.m. on November 15, which stated that the sender had been "hit three times" and "Tell bro call ASAP."

## II. DOCKET NO. 340390 (DEFENDANT TOOMER)

### A. INSUFFICIENT EVIDENCE

Defendant Toomer first argues that the prosecution failed to present sufficient evidence to support his felony-murder conviction. We disagree. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). We must review the evidence in a light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime," *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), and "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428, 646 NW2d 158 (2002). "[A] reviewing court is required to draw all reasonable inferences and make credibility determinations in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of first-degree murder are that the defendant killed the victim and that the killing was either "willful, deliberate, and premeditated," MCL 750.316(1)(a), or committed in the course of an enumerated felony, such as larceny or robbery, MCL 750.316(1)(b). *People v Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2002). In this case, the jury found Toomer guilty of both first-degree premeditated murder and first-degree felony murder. On appeal, however, Toomer only challenges his felony-murder conviction. In *People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999), our Supreme Court observed:

> The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute, including armed robbery.

> The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon. [Citation omitted.]

The underlying felony for the felony-murder charge was armed robbery, which contains the following elements:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous

-3-

weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Gibbs,* 299 Mich App 473, 490-491; 830 NW2d 821 (2013.]

The phrase "in the course of committing a larceny" is statutorily defined as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530; MCL 750.529.

Toomer does not challenge any of the individual elements of felony murder, but argues only that the evidence was insufficient to prove that he was a participant in the offense. It is well established that "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Viewed in a light most favorable to the prosecution, the evidence supported a finding that Toomer was a participant in the robbery and shooting of the victim. Testimony and forensic evidence concerning the .556 handgun as well as the other .40 and .45-caliber bullets and casings found at the scene supported an inference that at least two individuals attacked the victim. Three types of bullets, fragments, and casings were found. The victim had a .40-caliber handgun in his hand when the police arrived, .40-caliber casings and bullet fragments were found at the scene, and .40-caliber bullet fragments were removed from defendant Edwards during surgery. The .556 handgun, which had not been fired, was found lying next to defendant Edwards. The fact that the firearm's safety was on and that intact cartridges were found nearby led an investigating officer to conclude that the person with the .556 handgun had ejected a round after attempting to fire the gun but not being able to do so because the safety was on. This evidence supports a reasonable inference that Edwards was the person in possession of the .556 handgun. Other .45-caliber bullets and casings were found at the scene, and .45-caliber bullets were removed from the victim's body. However, no .45-caliber weapon was found with Edwards. This evidence reasonably supports an inference that another person, who was armed with a .45-caliber handgun, was involved. The locations of the .40 and .45-caliber spent cartridges supported a finding that two shooters fired, with the victim firing toward the west and the person with the .45-caliber weapon firing toward the east. Taken together, the evidence supported a reasonable inference that the victim shot at Edwards and wounded him, that Edwards tried to shoot at the victim but was unsuccessful, and that another person with a .45-caliber gun shot at the victim.

Other evidence supports a finding that defendant Toomer was the shooter with the .45-caliber gun. The investigating officer testified that he found a 25 by 53-inch hole in a chain link fence at the back of the property. In an alley behind the fence, the officer noticed a suspected trail of blood on the ground. DNA testing of a sample of blood taken from this trail matched defendant Toomer's DNA profile. In addition, when Toomer was arrested six days later, an officer found both bloody gauze and Toomer's cell phone in a trash bag, and it was discovered that Toomer had been shot in his right upper arm and in his right calf. Another officer testified that messages were sent from Toomer's phone at 1:26 a.m., 1:28 a.m., and 1:29 a.m. on November 15, 2016, in which the writer reported having been "hit three times" and "Tell bro call ASAP." In addition, cell phone records placed Toomer in the area of the victim's home at the time of the shooting.

This evidence, taken together, was sufficient to allow the jury to find beyond a reasonable doubt that defendant Toomer shot the victim with a .45-caliber gun, was himself shot during the offense but was able to escape through the hole in the fence, left the trail of blood leading away from the house, and then sent the text messages regarding his predicament in an effort to obtain assistance for his injuries. The evidence was sufficient to support Toomer's felony-murder conviction.

## B. EXPERT TESTIMONY REGARDING CELL TOWER MAPPING

Defendant Toomer next argues that the trial court erred by permitting Detroit Police Officer Robert Skender to testify as an expert on cell tower mapping techniques. We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. at 588-589.

MRE 702 provides that the trial court may admit expert testimony under the following circumstances:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Although our Supreme Court has also set forth factors a trial court should consider to ensure that expert testimony is reliable, see *People v Kowalski*, 492 Mich 106, 131; 821 NW2d 14 (2012), Toomer does not claim that the foundation for Officer Skender's testimony or the Pen-Link software on which he relied was unreliable or the results inaccurate. Rather, Toomer bases his claim of error principally on Officer Skender's lack of experience in the field in which he was qualified, particularly his use of the Pen-Link software. Toomer notes that Officer Skender began using the software approximately one month before Toomer's preliminary examination testimony in this case.

The record sufficiently demonstrates Officer Skender's qualification as an expert on the basis of his training, education, and experience regarding analysis of cell phone records and cell tower mapping. Officer Skender testified that he had received approximately 109 hours of training to analyze cell phone records and prepare cell tower maps, and he had been doing so for two years. He had been trained by a retired federal agent who specialized in the area, and he had taken a three-day course from the National White Collar Crime Commission for cell phone analysis and obtained a certificate. Although this case was the first time he had used the Pen-Link software for a case, he had received 80 hours of training on the use of the software. He also explained that he had previously performed the same analysis without the software, drawing his own maps, and that the software was merely designed to make this same work faster. He had

previously testified about the same subject matter, although he was not designated as an expert witness in the other case.

Because MRE 702 permits a witness to be qualified on the basis of a variety of factors, including training, education, and experience, and the testimony established that Officer Skender had received substantial training in analyzing cell phone records and preparing cell tower maps, including training from another specialist in the field, and he had also received training on the use of the Pen-Link software, the trial court did not abuse its discretion by ruling that Officer Skender was sufficiently qualified to assist the jury in interpreting the cell phone records to determine where calls were made in relation to cell towers in the area.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Toomer also raises several claims of ineffective assistance of counsel. Because Toomer did not move for a new trial or request a *Ginther*[2] hearing in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). To establish ineffective assistance of counsel, Toomer must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Toomer must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant Toomer first argues that counsel was ineffective for failing to call two alibi witnesses, Alexis Alexandra and Melvin Edwards. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Failure to call a witness amounts to ineffective assistance of counsel only if it deprives the defendant of a substantial defense, i.e., one that might have made a difference in the outcome of the trial. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009); *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015).

Toomer has not met his burden of establishing the factual predicate of his claim. He has not presented any affidavits from the alleged witnesses indicating what testimony they would have offered. His own affidavit summarizes their proposed testimony in only vague and general

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

terms. Moreover, Toomer's affidavit does not clearly indicate that Alexandra could even establish an alibi for the timeframe of the offense. Toomer avers that Alexandra could offer unspecified testimony about the evening of November 14, but the offense occurred during the early hours of November 15, 2016. Also, Toomer merely asserts that Edwards could testify about an unspecified social event on November 14, 2016, but Toomer does not state that he himself was present at the event, or where it took place. Considering that Toomer's proposed alibi testimony is directed at the evening of November 14, that the offense was committed early on November 15, that Toomer has not provided affidavits from either of the alleged alibi witnesses, and that Toomer was otherwise linked to the crime scene by DNA evidence from the blood trail at the scene and by cell phone evidence placing him in the area at the time of the shooting, Toomer has not demonstrated a reasonable probability that the witnesses could have provided a substantial defense. Accordingly, this ineffective-assistance claim cannot succeed.

Defendant Toomer also argues that counsel was ineffective for failing to file a motion to suppress evidence seized from the home where Toomer was arrested. Toomer contends that a purported witness, Minnie Long, could have testified that the police "confiscated and manipulated" evidence at this location before obtaining a search warrant. Again, Toomer has not presented any affidavit or other supporting evidence showing what testimony Long would have provided. Moreover, Toomer fails to explain what evidence was manipulated, how it was manipulated, or how the police actions prejudiced his defense. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted). It is undisputed that the police searched the house pursuant to a search warrant. Toomer has failed to offer any factual or legal support for his claim that a motion to suppress could have been successful. Therefore, this claim also fails.

Finally, Toomer argues that defense counsel was ineffective for rejecting a jury instruction on the lesser offense of second-degree murder. The record discloses that Toomer specifically agreed to forgo a lesser-offense instruction on second-degree murder after being informed of the risks involved, including the different penalties for first-degree murder and second-degree murder. Counsel may choose not to request instruction on a lesser offense as a matter of strategy, because such an instruction may reduce the chance of acquittal. *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986). The defense theory in this case was that Toomer was not a participant in the robbery and shooting. Given this theory, Toomer has not overcome the presumption that the decision to proceed with an all-or-nothing defense was a legitimate trial strategy. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). The fact that this strategy did not work does not constitute ineffective assistance of counsel. *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

III. DOCKET NO. 340546 (DEFENDANT EDWARDS)

A. INSUFFICIENT EVIDENCE

Defendant Edwards also argues that the evidence was insufficient to support his convictions. He principally argues that the evidence was insufficient to show that he was a participant in the offense as opposed to another victim. We disagree.

When the police arrived at the scene, a .556 handgun was found lying near Edwards, who had been shot and was lying on the ground. Testimony and forensic evidence concerning the .556 handgun, and the different types of bullets and casings found at the scene, support an inference that at least two individuals attacked the victim. Three types of bullets, fragments, and casings were found. The victim had a .40-caliber handgun in his hand and .40-caliber casings and bullet fragments were found at the scene and recovered from Edwards's body. Although there was no evidence that the .556 handgun was discharged during the offense, the fact that the firearm's safety was on and that whole cartridges were lying nearby led an officer to conclude that the person with the .556 handgun had ejected a round after initially trying to fire the gun, but not being able to do so because the safety was on. The evidence supported a reasonable inference that Edwards was the individual in possession of the .556 handgun. See *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989). In addition, other .45-caliber bullets and casings were found at the scene, and .45-caliber bullets were removed from the victim's body, but no .45-caliber weapon was found with Edwards or elsewhere at the scene. Taken together, the evidence supported a reasonable inference that the victim was confronted by two attackers, one being Edwards, who unsuccessfully tried to shoot the victim with the .556 handgun, that the victim shot Edwards with a .40-caliber gun, and that another shooter (Toomer) shot the victim with a .45-caliber gun.

Additional evidence contradicts Edwards's theory that he was with the victim and was attacked as well. The victim's wife and brother both testified that Edwards and the victim had been close friends since they were teenagers, but were no longer friends after a falling out two or three years earlier. The victim's wife testified that she had not had contact with Edwards in years, the victim had not mentioned renewing his friendship with Edwards, and as far as she was aware, the victim had not seen Edwards since their falling out. The victim's brother corroborated much of this testimony. He also stated that he and the victim spent a good deal of time together, he spoke to the victim less than two hours before the shooting, and the victim never said anything about renewing his friendship with Edwards. Further, there was no evidence of recent contacts between the victim and Edwards. In addition, the victim's wife stated that she heard only one car door shut when the victim returned home, thereby supporting an inference that he was alone when he arrived home. There was sufficient evidence to enable the jury to find that Edwards had not renewed his friendship with the victim and was not a second victim of the attack against the victim.

Defendant Edwards's actions after the shooting also supported a finding that he was one of the individuals who tried to rob the victim, and was not another victim himself. The victim's wife and others stated that Edwards tried to hide his face while being carried to the ambulance. The jury could have inferred from this evidence that Edwards was attempting to conceal his face because he feared the victim's wife would recognize him, which reflected his consciousness of guilt. In addition, according to witnesses and the victim's wife, Edwards did not call 911 after the shooting or inquire about the victim's health, but instead called for someone else to come and get him. There was also evidence of cell phone communications between Edwards and codefendant Toomer shortly after the shooting.

-8-

We also reject Edwards's argument that the evidence was insufficient to prove armed robbery, or the predicate offense of robbery for purposes of felony murder. The victim's wife and brother both testified that Edwards and the victim had previously sold narcotics together. This supports an inference that Edwards knew about the victim's drug sales, and was aware that he carried the narcotics with him. Although Edwards maintains that there was no evidence of a robbery because the bag of narcotics was not taken, the armed robbery statute, MCL 750.529, incorporates the statutory phrase "in the course of committing a larceny" from the unarmed robbery statute, MCL 750.530, which defines the phrase as including "acts that occur *in an attempt to commit the larceny*, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2) (emphasis added). MCL 750.316(1)(b) also provides that a conviction of first-degree felony murder can be based on a murder committed during an "attempt to perpetrate . . . robbery." Thus, the prosecutor was not required to prove an actual taking of property to prove either armed robbery or felony-murder. *People v Williams*, 491 Mich 164, 172; 814 NW2d 270 (2012).

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Edwards was acting in concert with codefendant Toomer, that they were both armed with handguns, and that the two of them intended to rob the victim of his narcotics and money. Therefore, the jury could find that Edwards was guilty as a principal offender of armed robbery, felon in possession of a firearm, and felony-firearm.

The prosecution also presented sufficient evidence to support Edwards's felony-murder conviction, even if Edwards did not fire the fatal shots. The prosecutor relied in part on a theory of aiding or abetting with respect to this charge. "The 'requisite intent' for conviction of a crime as an aider and abettor 'is that necessary to be convicted of the crime as a principal.' " *People v Mass*, 464 Mich 615, 628; 628 NW2d 540 (2001), quoting *People v Kelly*, 423 Mich 261, 278; 378 NW2d 365 (1985). The intent necessary to support a conviction of felony murder is the malicious intent required for a conviction of second-degree murder. See *Carines*, 460 Mich at759. Thus, to convict Edwards of felony murder under a theory of aiding or abetting, "it . . . must be shown that [Edwards] had the intent to kill, the intent to cause great bodily harm or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm" at the time he encouraged or otherwise participated in the offense. *Kelly*, 423 Mich at 278; see also *People v Barrera*, 451 Mich. 261, 294-295; 547 NW2d 280 (1996). The jury could find from the evidence that Edwards and Toomer intended to ambush and rob the victim after he arrived home after midnight, that Edwards was armed with a .556 handgun and Toomer with a .45-caliber gun, that Edwards attempted to discharge his gun during the offense but was unsuccessful because the safety was on, and that Toomer shot the victim with a .45-caliber gun, which killed him. The evidence supported an inference that, at a minimum, Edwards set in motion a force likely to cause death or great bodily harm. Even if Edwards did not personally shoot the victim, the jury could have found that he attempted to do so, which demonstrated his intent to kill or cause great bodily harm sufficient to show that he acted with malice.

Edwards also argues that the evidence was insufficient to support his conviction of premeditated murder. First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL

750.316(1). "Premeditation and deliberation require sufficient time to allow the defendant to take a 'second look.' " *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Premeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident, including the prior relationship of the parties, the defendant's actions prior to the killing, and the circumstances surrounding the killing itself. *Id*.

The investigating officer testified that someone had cut a large hole in the back fence leading to the driveway. Neither the victim's wife nor the neighbors heard arguing before the shots began. The evidence supported a finding that Edwards was armed with a .556 gun and tried to shoot the victim with it. Phone records showed Edwards's and Toomer's communications. Viewed in a light most favorable to the prosecution, the jury could reasonably find that Edwards and Toomer both armed themselves with guns and then laid in wait for the victim to return home late at night in order to kill him and take his narcotics and money.

Edwards also complains that the police did not adequately investigate another unidentified individual whom the victim's brother testified was currently working with the victim on a large drug purchase. However, the prosecution is not required to disprove every plausible alternative explanation offered by a defendant, but "need only convince the jury "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation omitted). It was within the province of the jury to find that any suggested involvement of the unidentified person was contradicted by the evidence linking Edwards and Toomer to the offense.

## B. SEARCH OF EDWARDS'S CELL PHONE

Defendant Edwards next argues that the trial court erred by denying his motion to suppress his cell phone records on the ground that the police unlawfully searched the phone before obtaining a search warrant. We disagree.

In *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016), this Court stated:

> We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation. We review for clear error any findings of fact made during the suppression hearing. A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. We review de novo the issue whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies. [Quotations and footnote omitted.]

The record discloses that Edwards's cell phone records and information were obtained pursuant to a search warrant. Edwards argues, however, that the records should have been suppressed because several calls were made on the phone after the 911 report of the shooting, but before the warrant was obtained. Although Edwards maintains that seven calls were made from his phone after the 911 report, testimony indicated that Edwards was talking on his phone when the police responded to the scene. However, one officer acknowledged making two calls from the phone approximately seven hours after the shooting. The officer called the last numbers dialed, explaining that she did so after the police discovered the blood trail leading away from

the scene. They were concerned that another person was injured and in need of medical assistance, so the officer dialed the last two numbers listed in the phone in an attempt to determine if one of the numbers was associated with the suspected injured person. The officer denied sending, receiving, or reading any text messages from the phone, or listening to any voicemail messages.

In *Mahdi*, 317 Mich App at 458, this Court observed:

> With regard to the search of the contents of a cell phone, the United States Supreme Court recently held that a warrant is generally required before searching the information contained in a cell phone. *Riley v California*, 573 US [373, 400;] 134 S Ct 2473, 2493; 189 L Ed 2d 430 (2014). However, the Court clarified that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Id*. at [401-402], 134 S Ct at 2494. Therefore, the search of the contents of a cell phone generally requires a warrant unless a case-specific exception applies.

One exception, on which the trial court and the prosecutor relied in this case, is the exigent circumstances exception. This

> well-recognized exception applies when the exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury. [*Riley*, 573 US at 402 (quotations omitted).]

In this case, the police discovered a blood trail leading away from the shooting scene through an alley, which caused them to deduce that another individual had been shot and may be in need of medical assistance. Officers observed Edwards talking on his cell phone when they arrived at the scene. This evidence established a sufficient nexus between the blood trail and Edwards's phone to support application of the exigent circumstances exception to justify a search of the phone for the limited purpose of determining if another person was in need of medical assistance. The scope of the search was limited to this narrow purpose because it was limited to calling the last numbers that Edwards had dialed to see if one of those numbers was associated with an individual who had been shot.

Although the calls were not made until 6:56 a.m., approximately seven hours[3] after the shooting, defendant does not challenge the time delay between the receipt of the phone and the calls on appeal. Rather, Edwards contends that the trial court erred by concluding that the issue was not timely raised. Although Edward's trial counsel represented that the phone records could

---

[3] Although the delay between the receipt of the cell phone and time of the phone calls was addressed on cross-examination at trial, it is not challenged on appeal.

-11-

not be printed until three days before trial, the trial court noted that it presided over multiple discovery meetings and the information was disclosed three months earlier.[4] We cannot conclude that the trial court clearly erred in its factual finding that the issue was untimely raised, *Mahdi*, 317 Mich App at 457, particularly where untimely motions may be denied to prevent use as a tactical device, see *People v Johnson*, 111 Mich App 383, 387; 314 NW2d 631 (1981).

Furthermore, the trial court did not err by finding that the inevitable-discovery rule also supported the introduction of Edwards's cell phone records. "The inevitable-discovery rule permits the admission of evidence obtained in violation of the Fourth Amendment if the prosecution establishes by a preponderance of the evidence that the information inevitably would have been discovered through lawful means." *Mahdi*, 317 Mich App at 469.

> This Court has cited several factors in determining whether the inevitable-discovery rule applies, including (1) whether the legal means were truly independent, (2) whether the use of the legal means and the discovery by the legal means were truly inevitable, and (3) whether application of the inevitable-discovery doctrine could incentivize police misconduct or significantly weaken the protection provided under the Fourth Amendment. [*Id.* (citation omitted).]

Edwards does not challenge the seizure of the phone itself. When the police arrived, they saw Edwards talking on the phone. One of the offices removed the phone from Edwards's possession and the phone was later given to the officer who made the calls. Another officer arrested Edwards at 4:00 a.m., before any calls were made by the police and before any search of the phone or records themselves, which occurred pursuant to a warrant. Therefore, contrary to Edwards's assertion, there is no basis for concluding that his arrest was based on an illegal search of his phone.

With respect to the warrant, the trial court did not err by finding that the police had probable cause to obtain a warrant to search the phone records. Review of a magistrate's decision to issue a search warrant involves an inquiry of "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Mullen*, 282 Mich App 14, 21-22; 762 NW2d 170 (2008) (citation and quotation marks omitted). To discern a "substantial basis" for probable cause, a reviewing court "must ensure

---

[4] We note that Edward's trial counsel initially sought suppression of evidence premised on the lack of a search warrant. However, after receipt of the search warrant, the motion was withdrawn. At trial, Edward's counsel raised the issue of the police use of his cell phone before obtaining the search warrant, citing receipt of the documentation only 72 hours before trial. The court principally denied the motion as untimely, observing that the trial was previously adjourned and numerous meeting were held with the court three months earlier regarding discovery pertaining to the search warrants and cell phones. Further, the court acknowledged that it was well known that the cell phone data was in Blu-ray format. Alternatively, the court cited inevitable discovery and exigent circumstances in light of the blood trail leading away from the shooting and the preparation of the search warrant. However, these rulings were based on the limited knowledge of the circumstances because a testimonial offer of proof was not requested.

that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 22 (citation and quotation marks omitted). Considering that Edwards was found at the shooting scene talking to someone on the phone, there was a fair probability that a search of the phone records would uncover evidence of the crime. Therefore, the trial court did not err by finding that a legal means for obtaining the records existed independent of any improper discovery of information, making the legal discovery of that information inevitable. Moreover, considering the limited nature of the prior "search" and the reason for that limited search, which ostensibly involved a concern that another person was injured and in need of medical assistance rather than an attempt to obtain evidence without a warrant, application of the doctrine in this case would not incentivize police misconduct or significantly weaken Fourth Amendment protections. Therefore, the trial court did not err by ruling that the inevitable-discovery doctrine also permitted the introduction of Edwards's cell phone records, which were obtained pursuant to a duly authorized search warrant.

## C. LATE ENDORSEMENT OF EXPERT WITNESS

As discussed earlier, the trial court did not abuse its discretion by ruling that Officer Skender was qualified to testify as an expert witness regarding analysis of cell phone records and cell tower mapping. Defendant Edwards further argues, however, that Officer Skender was not identified as an expert witness before trial, contrary to MCR 6.201(A)(1) and (3), and the trial court should not have allowed his late endorsement as an expert.

The record discloses that the prosecutor did not provide defendants with notice that she intended to call Officer Skender as an expert witness, rather than a fact witness, until midtrial. Therefore, Edwards is correct that the prosecutor violated MCR 6.201(A). When there has been a discovery violation, a trial court has discretion to determine an appropriate remedy for the violation. MCR 6.201(J). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). "[T]he exclusion of a witness is an extreme sanction that should not be employed if the trial court can fashion a different remedy that will limit the prejudice to the party injured by the violation while still permitting the witness to testify." *People v Rose*, 289 Mich App 499, 526; 808 NW2d 301 (2010).

When counsel for Edwards raised her objection, the trial court faulted both the prosecutor and the defense attorneys for the confusion surrounding the characterization of Officer Skender's testimony. The court noted that the defense attorneys had known for some time that Officer Skender intended to testify and they were aware of the subject matter of his testimony. The court also noted that the parties had been in trial together for three weeks and could have resolved the issue earlier. Counsel for defendant Edwards did not ask for a more limited sanction, or more time to review the evidence in light of Skender's late endorsement as an expert witness. Nor did defense counsel state any particularized harm that Edwards would suffer, other than alleged surprise. Under the circumstances, and keeping in mind that the sanction of excluding expert testimony is to be avoided, *Rose*, 289 Mich App at 526, the trial court's decision to allow Officer Skender to testify, subject to his qualification as an expert, was not outside the range of principled outcomes.

Edwards also argues that, had the defense been timely notified that Officer Skender would testify as an expert, he could have consulted his own expert concerning the use of the Pen-Link technology on which Officer Skender relied in his testimony. Edwards did not make this argument below, leaving it unpreserved. *Carines*, 460 Mich at 763-764. Accordingly, we review this claim for plain error affecting Edwards's substantial rights. *Id.* The record discloses that the cell phone records were provided to Edwards well in advance of trial. Indeed, he stipulated to their use at the preliminary examination. Edwards was also aware that Officer Skender intended to testify concerning the mapping data. Therefore, the defense had ample time to seek its own expert on this subject. Moreover, Edwards has not presented any affidavit or other evidence to show what testimony a defense expert could have provided if one had been called. Accordingly, Edwards has not shown that any error affected his substantial rights.

## D. EDWARDS'S ABSENCE DURING JUROR QUESTIONING

Next, Edwards argues that he is entitled to a new trial because he was not present when the trial court questioned a juror regarding the juror's possible relationship to Edwards. The record discloses that Edwards specifically agreed to this procedure. By specifically agreeing to be excused during the juror's questioning, Edwards waived any claim regarding his right to be present during the juror's questioning. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144, 149 (2000).

## IV. EDWARDS'S STANDARD 4 BRIEF IN DOCKET NO. 340546

Defendant Edwards raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. None of the additional issues were preserved in the trial court. Therefore, we review them for plain error affecting Edwards's substantial rights. *Carines*, 460 Mich at 763-764.

## A. PROSECUTORIAL MISCONDUCT

Edwards raises several claims of prosecutorial misconduct. "Prosecutorial misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *People v Rice*, 235 Mich App 429, 434; 597 NW2d 843 (1999).

### 1. PERJURED TESTIMONY

Edwards argues that the prosecutor improperly allowed perjured testimony at trial. It is well established that a prosecutor may not knowingly use false testimony to obtain a conviction, and a prosecutor has a duty to correct false evidence when it arises. *People v Wiese*, 425 Mich 448, 455, 389 NW2d 866 (1986); *People v Woods*, 416 Mich 581, 601; 331 NW2d 707 (1982). In support of this argument, Edwards relies on minor inconsistencies between the trial testimony of Eve Parker and her prior testimony concerning Edwards's relationship with the victim and whether the victim allowed visitors to their home. These inconsistencies do not establish that Eve Parker perjured herself, as opposed to having modified or further clarified various answers in response to additional questioning or the context of the different questions asked. See *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004) (stating that perjury is a willfully false

-14-

statement). Further, to the extent that some of Eve's testimony could be viewed as inconsistent with her prior testimony or statements, a prosecutor has no obligation to disbelieve his or her own witnesses. *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds, *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014).

Edwards also argues that Sergeant Michael Holeman offered perjured testimony at trial when he testified that Edwards was wearing a ski mask, given that he described the article of clothing as a skull cap at the preliminary examination. Regardless of the differences in how Sergeant Holeman characterized this article of clothing, the jury could not have been misled because the actual hat that Edwards was wearing was introduced into evidence at trial, enabling the jurors to view it themselves. Edwards also notes that Sergeant Holeman did not mention the .556 weapon in his initial police report or in his preliminary examination testimony. However, the failure to mention this item earlier does not compel a conclusion that Sergeant Holeman lied about this point at trial. In addition, Sergeant Holeman was questioned on cross-examination about this earlier omission in an attempt to discredit his trial testimony. The jury was able to evaluate for itself whether Sergeant Holman's failure to mention the gun earlier affected the credibility of his trial testimony.

## 2. VOUCHING FOR WITNESS

Edwards complains that the prosecutor improperly vouched for the credibility of David Parker during closing argument. We disagree. "Although a prosecutor may not vouch for the credibility of a witness, a prosecutor may argue and make reasonable inferences from the evidence to support a witness's truthfulness." *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013). A prosecutor may also argue from the facts that a particular witness should be believed, as long as the prosecutor does not "vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness." *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005) (citations omitted). During closing argument, the prosecutor discussed how David Parker had freely revealed during his police interview details of the victim's various drug activities and the victim's dispute with a person named Ant over money. Viewed in context, it is apparent that the prosecutor's statements that David did not mislead the officers and was testifying "honestly" were based on David's openness during his police interview and testimony. The prosecutor did not imply any special knowledge of David's veracity that was not presented to the jury. Accordingly, Edwards has not shown a plain error in this regard.

## 3. COMMENTING ON SILENCE

Edwards next argues that the prosecutor improperly elicited testimony from the arresting officer that Edwards asked to speak with his mother and an attorney after his arrest. A defendant's postarrest, post-*Miranda*[5] silence is generally prohibited as a violation of a defendant's due-process rights. *People v Shafier*, 483 Mich 205, 212-214; 768 NW2d 305 (2009). It is unclear from the record whether Edwards had been advised of his *Miranda* rights

---

[5] *Miranda v Arizona*, 384 US 436, 467-473; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

before he made his statement. We note, however, that another officer presented similar testimony of Edwards's silence after he was provided with *Miranda* warnings. However, to the extent that the introduction of this testimony qualifies as plain error, Edwards has not established that it affected his substantial rights considering the other strong evidence of Edwards's guilt, which included additional post-shooting conduct inconsistent with Edwards's claim that he was an additional victim of the attack rather than one of the attackers. Accordingly, Edwards is not entitled to relief on the basis of this unpreserved issue. *Carines*, 460 Mich at 763-764.

## 4. SHIFTING THE BURDEN OF PROOF

Edwards argues that the prosecutor improperly shifted the burden of proof by stating during closing argument that Edwards did not call 911 while he sat disabled on the driveway after the shooting. However, "[a] prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true." *People v Goodin*, 257 Mich App 425, 432, 668 NW2d 392 (2003). Edwards also maintains that the prosecutor improperly shifted the burden of proof when she commented on his failure to tell responders that the victim needed help and on his failure to speak with Eve after the shooting, and also commented about Edwards giving the police a false name. All of these statements were proper comments on evidence that tended to rebut Edwards's claim that he was also a victim. See *McGhee*, 268 Mich App at 635 ("attacking the credibility of a theory advanced by a defendant does not shift the burden of proof"). Moreover, the trial court properly instructed the jury on the prosecution's burden of proof. Thus, Edwards has not demonstrated a plain error.

## 5. RES GESTAE WITNESS

Edwards next argues that the prosecutor committed misconduct by failing to call Richard Smith, who was apparently one of the persons who called the police after the shooting. MCL 767.40a(2) provides that "[t]he prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known." The prosecution's July 20, 2017 witness list named Smith as a witness. Although Edwards maintains that Smith's account would have contradicted testimony from other eyewitnesses, he provides no factual support for this assertion and offers no details as to what testimony Smith would have provided.[6] The record indicates that the prosecutor disclosed this witness during trial, and Edwards does not explain how this late endorsement prejudiced him. We note that trial continued for several more days and Edwards does not contend that defense counsel was unable to contact this witness before calling defense witnesses. For these reasons, Edwards has not shown outcome-determinative plain error.

## 6. FAILURE TO DISCLOSE EVIDENCE

---

[6] Edwards suggests that Smith's testimony would have related to the black sweatshirt or hoody that codefendant Toomer allegedly wore at the time of the shooting. However, he fails to explain how such testimony would have been helpful to his defense.

Edwards next argues that the prosecutor committed misconduct by failing to provide the defense with Eve Parker's cell phone records for the night of the shooting. Due process requires the prosecution to "disclose evidence in its possession that is exculpatory and material." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). The record discloses that the prosecutor provided Eve Parker's telephone records to defense counsel during trial. Defense counsel initially informed the court that she was having difficulty opening the electronic file that contained the records. The prosecutor offered assistance and the trial court asked the parties to resolve the issue during a lunchbreak. There is no indication in the record that defense counsel reported any continuing problems reviewing the phone records. Because the record shows that the telephone records were provided to the defense, we reject this claim of error.

### B. DISCLOSURE OF CODEFENDANT TOOMER'S PRIOR CRIMINAL HISTORY

Edwards next argues that he was prejudiced by the trial court's inadvertent reference to codefendant Toomer's prior criminal history when the court read the information to prospective jurors before voir dire. The trial court acknowledged its mistake. See *People v Mayfield*, 221 Mich App 656, 661; 562 NW2d 272 (1997), citing *Old Chief v United States*, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997). Accordingly, the court later provided a specific curative instruction, instructing the jurors not to consider the information. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Edwards has not overcome the presumption that the trial court's instruction cured the court's error, particularly considering that the reference to Toomer's prior offense was brief and occurred before jury selection at a trial that lasted almost three weeks. Edwards is not entitled to relief with respect to this issue.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Edwards also raises several claims of ineffective assistance of counsel. Because Edwards did not raise these claims in a motion for a new trial or request for a *Ginther* hearing in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *Payne*, 285 Mich App at 188; *Horn*, 279 Mich App at 38.

### 1. FAILURE TO CALL WITNESSES

Edwards first complains that defense counsel was ineffective for failing to call several listed witnesses. The decision whether to call the witnesses was a matter of trial strategy. *Rockey*, 237 Mich App at 76. The record discloses that Edwards acknowledged on the record at trial that he and defense counsel had discussed whether to call any defense witnesses, and Edwards expressly stated that he had decided not to call any witnesses. Edwards has not overcome the presumption that this decision was based on sound strategy. Moreover, by expressly agreeing that, after consulting with defense counsel, he was electing not to call any witnesses, Edwards has waived this claim of error. *Carter*, 462 Mich at 215. Moreover, Edwards has not provided any affidavits from his proposed witnesses showing what testimony they would have provided if called. Absent such a showing, he has also failed to meet his burden of showing a reasonable probability that their testimony might have made a difference in the outcome of the trial.

## 2. RES GESTAE WITNESSES

Edwards next argues that counsel was ineffective for failing to call Richard Smith, a res gestae witness. Again, however, Edwards has not overcome the presumption of sound trial strategy, nor has he met his burden of establishing that Smith could have provided any information helpful to Edwards's defense. Edwards suggests that Smith could have refuted the prosecution's theory that codefendant Toomer was wearing a black sweatshirt or hoody. However, there is no reasonable probability that any testimony about Toomer's clothing would have been material, let alone helpful to Edwards's defense. The nature or color of Toomer's clothing was not material to his identification as a participant in the crime. No one identified any participant by their clothing. The prosecution theorized that Toomer was wearing a black sweatshirt only because Toomer had a gunshot wound in his right arm and, when Toomer was arrested, the police discovered a black sweatshirt in his room with a hole in the right sleeve. But regardless of whether Toomer was wearing that particular sweatshirt, he still had the gunshot wound in his arm and the blood sample taken from the trail of blood that led away from the shooting scene matched Toomer's DNA profile. It was these latter pieces of evidence, not the sweatshirt, that was material to establishing Toomer's identity as a participant in the crime. In sum, Edwards has not established a reasonable probability that any testimony Smith might have offered regarding Toomer's sweatshirt would have affected the outcome of Edwards's trial.

## 3. FAILURE TO RESPOND TO THE PROSECUTOR'S MISSTATEMENT OF EVIDENCE

Edwards argues that defense counsel was ineffective for failing to object to Sergeant Holeman's testimony about whether Edwards was wearing a skull cap or a ski mask. However, given that the actual cap or mask was entered into evidence, enabling the jury to draw its own conclusion about its characterization, there is no reasonable probability that the outcome of trial would have been different if counsel had objected.

## 4. FAILURE TO IMPEACH

Edwards also argues that trial counsel was ineffective for failing to effectively impeach Sergeant Holeman and Eve Parker. The record does not support this claim.

With respect to Sergeant Holeman, Edwards again notes the inconsistent testimony concerning whether he was wearing a ski mask or a skull cap, and the fact that Sergeant Holeman did not mention before trial that he had moved the .556 weapon away from Edwards. Edwards also notes that Holeman testified at trial that he left the crime scene at 6:00 a.m., but had earlier testified that he left at 4:30 a.m. With respect to Eve Parker, Edwards again notes that she provided inconsistent testimony about whether the victim invited company to his home and the state of the victim's relationship with Edwards at the time of the shooting. The record discloses that defense counsel cross-examined both witnesses on these subjects at trial. Counsel elicited Sergeant Holeman's acknowledgment that his police report did not mention that he had pushed the .556 weapon away from Edwards at the scene, and that Sergeant Holeman had used the term "skull cap" while testifying at the preliminary examination. Counsel also thoroughly cross-examined Parker about her testimony concerning Edwards's relationship with the victim, whether the victim routinely had people come to his home, and whether the victim had other enemies. Edwards has not shown that defense counsel's impeachment efforts were objectively

unreasonable, or that counsel's failure to impeach Eve Parker with what amount to fairly minor inconsistencies affected the outcome of the trial.

## V. EDWARD'S SECOND APPELLANT BRIEF

In his second appellant brief,[7] Edwards contends that the trial court improperly denied his request for funds to appoint a private investigator to explore whether jurors were intimidated by friends and relatives of the victim. In light of the record, we do not conclude that the trial court abused its discretion.

During the trial, a juror represented that he recently discovered a relationship to Edwards, and he was excused from the jury. However, in this brief, Edwards denied any relationship. Edwards retained a private investigator, Miguel D. Bruce, to research the "rumors" that jurors were intimidated by the victim's family and friends. Bruce interviewed two jurors that were not threatened or intimidated and were unaware of any such conduct. However, Bruce asserted that juror Elaine Colden offered that she was not personally threatened or intimidated, but knew of others who received threats. Yet, when called to testify, Colden stated that she had no knowledge of other jurors being threatened or intimidated and denied making any such statement to Bruce. Colden testified that while Bruce was at her home she advised that she was getting her phone to call the court, but when she returned, Bruce had left. The trial court denied Edward's motion for a new trial or judgment notwithstanding the verdict premised on this "newly discovered" evidence. It rejected the contention that the jury was exposed to an "extraneous influence," stating that Edwards failed to identify "the nature of the influence, who exerted it, when it was exerted or on whom the influence was levied." Rather, Edwards merely offered speculation and hearsay. Therefore, the trial court held that these unsupported allegations and innuendo did not warrant extending funding of a private investigator to post-conviction proceedings.

A trial court's decision whether to grant an indigent defendant's motion for appointment of an expert witness, MCL 775.15, is reviewed for an abuse of discretion. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). An abuse of discretion occurs when the decision falls outside the range of principle outcomes. *Id*. at 617. "To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Id*. The mere possibility that an expert would provide assistance is insufficient. "Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Id*.

In light of the record, the trial court did not abuse its discretion by failing to allow funds for appointment of a private investigator. Edwards retained private investigator Bruce to probe the issue of juror intimidation. However, two witnesses did not support the theory. Although

---

[7] We granted defendant permission to file a second brief to address post-conviction hearings pertaining to jury tampering and appointment of a private investigator. *People v Edwards*, unpublished order of the Court of Appeals, entered July 18, 2019 (Docket No. 340546).

Bruce offered that Colden represented that other jurors expressed threats or intimidation, she denied making any such representation to him. Although Edwards attempts to correlate a jury's dismissal to intimidation, the juror disclosed a distant relationship between his father and Edwards, resulting in the parties' stipulation to excuse the juror. Edwards did not identify factual evidence of juror threats and intimidation and correlate it to the need for funds for an expert investigation. *Carnicom*, 272 Mich App at 617.

We affirm defendants' convictions, but remand for modification of defendants' judgments of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford